### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

# AT GAINESVILLE,

## OCTOBER TERM, 1854.

Present—JOSEPH H. LUMPKIN,
EBENEZER STARNES, } *Judges.*
HENRY L. BENNING,

---

No. 52.—LAWRENCE BROCK, plaintiff in error, *vs.* WILLIAM. GARRETT, trustee &c. defendant in error.

[1.] It is to be presumed, that by the law of Alabama, a purchaser under a judgment of that State, and purchasing in that State, acquires all the title which the defendant in the judgment had.

[2.] As a general rule, a judgment is evidence as between the parties to it, and their privies.

[3.] A verdict, if against law, ought not to be allowed to stand.

Trover, in Floyd Superior Court. Tried before Judge JOHN H. LUMPKIN, March Term, 1853. Motion for new trial. Decided at May Term, 1854.

This was an action of Trover, brought by William Garrett, as trustee for Mrs. Arianna Washington, against Lawrence Brock, for sundry slaves. The plaintiff below claimed under

a deed executed in 1816, in King George County, Virginia, by Warner Washington and Arianna Washington, his wife, whereby, in consideration of six shillings, they granted and conveyed unto Needham L. Washington sundry slaves and other property, together with certain funds and property in expectancy, " To have and to hold the aforesaid negroes and other property herein conveyed by the said Warner, as well as all the right and title of, in and to all other property, properties, estate or estates, which they, the said Warner and Arianna now are or hereafter may be entitled to, either by inheritance, in right of her the said Arianna, or otherwise, and also herein jointly conveyed by the said Warner and Arianna, unto the said Needham L. Washington, his heirs, executors and administrators—shall and will stand possessed of the said property granted, bargained and sold, as well as of the land and improvements, &c. &c. to the uses and purposes hereinafter expressed and no other.   First.  To the use of the said Warner and the said Arianna, his wife, during their joint lives, to pay over to them the profits thereof.   Secondly.  To the use of the longest liver for his or her life.   Thirdly.  To the use of Frances Whiting Washington, John Stith Washington and Harriet Ann Washington, children of the said Warner and Arianna, and any other child or children that the said Warner and Arianna may hereafter have of their bodies : in either case, to pay over to them the profits of the aforesaid estate.   Fourthly. That the said Warner shall have the right and the power, at his death, to appoint and direct by will, deed or otherwise, in what manner the aforesaid property and estate, as well as the right to the increased part of the expectations by his wife Arianna, at the death of her mother, provided it be not gotten before his, the said Warner's death, and every other right in inheritance whatever, to which he the said Warner and the said Arianna, or either of them, may now or hereafter be entitled, shall be disposed of and distributed amongst his aforesaid several children, by his said wife Arianna, and no others ; and also at the same time, to order and direct when this trust shall finally cease and expire.   And lastly—in case the said Warner

shall fail or neglect, from any cause whatever, to appoint or direct as aforesaid, by deed, will or otherwise, in what manner the aforesaid property and estate, as well as the increased part of the expectation, by his said wife Arianna, at her mother's death aforesaid, together with any other right or title, to which he, the said Warner and the said Arianna, or either of them, may be entitled, either by inheritance or otherwise, shall be disposed of and distributed amongst his aforesaid several children ; that in that event it be understood hereby that his, the aforesaid several children, shall divide the same as they will be thereto entitled by virtue of the Statute of Distribution of the estates of intestates, and that this trust shall finally cease and expire, when the youngest of the aforesaid children shall arrive to lawful age, provided the said Warner shall die before that time. And the said Needham L. for himself, &c. covenanted to stand possessed of the said property, for the uses and purposes aforesaid, and no other," &c.

This deed was proven and recorded in King George County, and was thence certified to Frederick Co. to be there recorded.

Subsequently, upon a bill filed, to which this deed was attached as an exhibit, Needham L. Washington was removed from his trust, by the Chancery Court of Fredericksburg District, and William Garrett appointed trustee in his stead. An exemplification of the record of this bill and exhibits, and decree, certified by the Clerk of the Superior Court of Spotsylvania County, Virginia, and by the Judge of that Court, was admitted in evidence by the Court, on the trial.

A record was offered and admitted in evidence of a bill filed by Mrs. Washington, in the Chancery Court for the Northern Division of Alabama, which was sanctioned by the Chancellor, on condition that bond and security should be given, which it appeared never was given. The bill set out a claim cause pending in Alabama, and Mrs. Washington's rights under the trust deed above set forth.

The defendant claimed under a Sheriff's deed, made in pursuance of a sale by the Sheriff in Alabama. From the record

of a claim cause in said State, it appeared that an execution against Warner Washington, was levied on the negroes in dispute, in 1841; that William Garrett interposed a claim thereto, and in his affidavit of claim, stated that they were "held by him as trustee, for the use of Arianna Washington, who has the beneficial interest in the same, by virtue of a deed of trust made and executed the 14*th day of January A. D.* 1840". It also appeared that in making up the issue, the claimant stated, "that the negroes in controversy are not the property of Warner Washington, but that he holds the same as trustee for the use of A. Washington, under a deed made in the State of Virginia, on the 1*st day of December* 1816". The Jury found the property subject to the execution, and set out in their verdict the value of each negro, being the market value at that time. Under this finding, the negroes were sold and the defendant became the purchaser.

The depositions of Messrs. Walker and Martin, the Attorneys on each side of this claim cause, were offered and admitted in evidence, for the purpose of showing that the rights of Mrs. A. Washington were not passed upon at the trial of that issue. They did not fully agree—one sustaining this view, and the other inclining to the opposite conclusion.

Warner Washington died in the year 1849. The only testimony offered, of the value of the negroes, was the opinion of one witness, as to their value in 1841.

The motion for a new trial was made on various grounds; and being refused by the Court, error is assigned, as follows—

1st. Error in the Court in refusing to charge, "that if the Jury find, from the evidence, that the negroes in dispute were levied on and claimed by the present plaintiff, as trustee for Arianna Washington, and the negroes were found subject to the execution on the trial of the claim, and were sold afterwards to satisfy said execution, and Brock purchased them at Sheriff's sale, then the judgment subjecting the property to the payment of the execution, is a bar to the plaintiff's right of recovery, in this action, and the Jury must find for the defendant.

2nd. In refusing to charge, that a party to a judgment cannot attack it in any other cause, collaterally; but the judgment is conclusive against him, until reversed, and if the plaintiff could have sustained his claim and failed to do so, he cannot now show the negroes not subject to the execution.

3d. In charging that the judgment in the claim case in Alabama, which was pleaded in bar of this case, is not a bar to the plaintiff's right to recover.

4th. In charging, that if the claim case in Alabama was tried on its merits, then the judgment in that case was a bar to this action: but if it was not tried on its merits, of which the Jury were to determine from the evidence, then it was no bar to this action.

5th. In charging, that a judgment and execution binds no property, except that of the defendant in *fi. fa.* and that the Sheriff could not sell and convey any interest, except that of the defendant in *fi. fa.*

6th. In charging, that if the Jury believed, from the evidence, that Warner Washington had only a life estate in the property sold, the purchaser took nothing more.

7th. In admitting in evidence a copy of the trust deed, without its being certified as required by law, and without proof of the execution of the original.

8th. In admitting in evidence the original bill in Equity, filed by Mrs. Washington in Alabama.

9th. In admitting in evidence, the depositions of Martin and Walker.

10th. In admitting the proof of the value of the negroes, in 1841.

11th. In refusing to grant a new trial, on the ground that the verdict was contrary to the charge of the Court—the Court having charged that if the defendant had the negroes more than four years in his possession, before the commencement of the suit, under a purchase at Sheriff's sale, then the Statute of Limitations would bar the plaintiff's right to recover.

12th. In refusing a new trial, on the ground that there was

no evidence to support the verdict, for the amount found as the value of the negroes and their hire.

AKIN and COBB, for plaintiff in error.

ALEXANDER & UNDERWOOD, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Whatever title Brock had, he derived from the law of Alabama. He bought the negroes in Alabama, under a judgment of a Court of Alabama. That judgment was one in which the Branch of the Bank of the State of Alabama, at Huntsville, was plaintiff, and Garrett was claimant; and Warner Washington was one of the defendants in the *fi. fa.* which gave rise to the claim.

[1.] By the law of Alabama, as it is to be presumed, a purchaser under a judgment, purchases and acquires all the title which the defendant in the judgment had. This is a general principle—common, probably, to every system of Law. If the judgment be a judgment of condemnation in a claim case, the purchaser, it is to be also presumed, acquires not only all the title which the defendant in judgment had, but also all the title which the claimant had, which he could have asserted by the claim. This title of the *claimant's* the purchaser acquires by virtue of the doctrine of estoppel. The claimant being a party to the judgment, is to be considered, after the judgment, estopped from saying that he has a title which he could, by asserting, have made the means of preventing the judgment.

Whether, however, this doctrine of estoppel applies to a case in which the claimant is but a *trustee*, is a question which, though involved in this case, it is not necessary to decide; for whether it does or does not, the judgment of this Court, under the peculiar facts of the case, would be the same. This will be seen.

And by the law of Alabama, the interest which Warner Washington, the defendant in the judgment, had in the ne-

groes, was that of an estate for his life, and no longer. This appears by a decision of the Supreme Court of that State, made upon a deed similar to this deed of 1816, executed by Warner Washington. The decision is that made in the case of *The Branch Bank at Montgomery vs. Wilkins*, (7 *Ala. N. S.* 589.)

This interest, then, was that which was bound by the judgment; and being an interest to endure for the life of the defendant in judgment, Warner Washington, it was such an one as to be paramount to any right at that time assertible by Garrett, the trustee; that is to say, Warner Washington's interest was such as to make it impossible that Garrett could have any interest, which he could assert against it by a claim. If Warner Washington had the whole life estate, there was no estate left which Garrett could have, except that which might remain after Warner's death.

If we admit, therefore, that Garrett, although but a trustee, was, by the judgment, estopped from asserting any title which he might have asserted in the case, which resulted in the judgment, we admit what amounts to nothing; for when the case was tried, he had no title which he could assert on the trial. And, indeed, if he had a title which he might have asserted, but did not assert, his being estopped, as to that title, would not estop him from asserting another title, which he could not, until afterwards, assert.

It follows that all the interest which Brock acquired by his purchase, was the interest which Warner Washington had, which was an interest but for the life of him, Warner; and that he acquired no interest or title, by means of estoppel, from Garrett.

So much for Brock's title.

What was Garrett's? The remainder in the negroes, after the expiration of the estate for the life of Warner Washington. This was a title which Garrett could not have asserted on the trial of the claim, for this title did not then exist; at least, did not exist, except as one to be asserted in the future.

To this title of Garrett's, the plea of the judgment in Alabama, was therefore manifestly no bar.

It was no error, therefore, in the Court below, not to give the charges which it was requested to give, or to give the charge, that the judgment in Alabama was not a bar to the suit.    It was an error, indeed, to charge that the judgment in Alabama, if in a case tried on *the merits*, was a bar, but an error against the defendant in error, not against the plaintiff; for even if the judgment was in a case which had been tried on its merits, it could be no bar to any title which did not exist in a form to be asserted at the time of the trial which resulted in the judgment.

So, although it may be true, as a general rule, that the purchaser, under a judgment rendered in a claim case, acquires not only such title as the defendant had, but also such as the claimant had; yet, as in this case, the claimant was a trustee, and there is some doubt as to whether the doctrine of estoppel applies to trustees; and as the claimant had, in fact, no title at the time of the trial, which he could assert, and therefore, as to which he could be estopped; and so, had no title which the purchaser could acquire; and as we grant a new trial on other grounds in the case, we do not choose to say that the Court erred in charging, that the purchaser under a judgment which was a judgment in a claim case, gets no title except that of the defendant in the judgment.    We prefer not to express an opinion on this point.

So, of course, it was no error to charge, that if Warner Washington had only a life estate in the property, the purchaser took nothing more.

[2.] The exemplification of the judgment rendered in the Court in Virginia, was not proper evidence for proving the *trust deed*.    Brock was no party to that judgment; therefore, it did not bind him.    The Court, therefore, should not have allowed the exemplification to be used for *that purpose*.

Considering, however, that Garrett derives his whole power, as trustee, from this judgment, I have, myself, very great doubt whether the judgment is not good evidence for him to prove every thing relating to his title, including the existence of the trust deed.    But if the deed could be produced, or if witnesses

to its existence could be brought forward, proof of the deed, in either of those ways, would at least be more satisfactory.    See Greenlf. Ev. §527.

[3.] John Stith Washington proved what was the value of the negroes in 1841.    The trial was in 1853.    The conversion, which dated from the death of Warner Washington, some time in 1849.    What was proved then was the value of the negroes, at from eight to twelve years before the time at which the value was assessed by the Jury.    Is it reasonable to presume that the negroes remained of the same value so long—that they had not, towards the latter part of the period, some of them, more or less, depreciated in value?    We think not.    Unless, therefore, the plaintiff in the suit had shown this to be the best or only evidence in his power, we think it ought not to have been received.

[3.] The verdict being founded, as to the value of the negroes, on this testimony of John Stith Washington; and being also, in part, rendered for half the hire of the negroes from 1845—four years before the plaintiff's title to sue accrued, of course was such as ought not to have been allowed to stand.

The admission of the original bill in Equity, from Alabama, and the depositions of Walker, and those of Martin, was, as far as we can see, the admission of what was merely irrelevant.

On the whole, the Court should have granted a new trial— placing it on the grounds above indicated; and therefore, this Court grants one, on those grounds.

As to the Statute of Limitations, that could not commence to run against Garrett, the trustee, until the termination of the life estate which preceded his—i. e. until the death of Warner Washington.    And the charge of the Court to the contrary was, itself, wrong; and if wrong, it was no error in the Jury not to follow it.    Their finding contrary to this charge, then, is not a ground for a new trial.    On the motion for the new trial, the Court, itself, became conscious of its error, and admitted it.