The Charles Baumbach Co. vs. Gessler.

THE CHARLES BAUMBACH COMPANY, Appellant, vs. GESSLER, Respondent.

*April 10 — May 5, 1891.*

*Sale for special use: Implied warranty.*

One who contracts to sell and deliver goods of a particular quality, and for a specified use, the requirements of which are well known to him, thereby impliedly warrants that they shall be fit for that use,

: and he cannot recover the agreed price if those furnished prove of a different quality and unfit for such use, and are refused by the purchaser for that cause. If that defense is clearly proved in an action for the price, a verdict for the plaintiff should be set aside.

APPEAL from the Circuit Court for *Milwaukee* County.

The case is stated in the opinion. The plaintiff appeals from an order setting aside a verdict in its favor and granting a new trial.

*H. A. Wambold* and *J. C. McKenney*, for the appellant.

For the respondent there was a brief by *Rose & Bell*, and oral argument by *D. S. Rose*.

ORTON, J. This action is brought to recover the value of 500,000 catchet wafers (less 200,000 returned) sold and delivered by the plaintiff to the defendant at ninety-four cents per M., making $468.12. The defense set up in the answer is substantially as follows: The defendant by telephone requested the plaintiff to order from Europe, where they are manufactured, 500,000 catchet wafers, of a tough and leathery quality, suitable to be used in inclosing a medicine that he had invented and was making, called "Headache Wafers," and to keep them on hand for the defendant to obtain as he wished to use them for such purpose, and furnish them to the defendant at eighty-eight cents per M. The plaintiff ordered 500,000 catchet wafers of a dry, hard, and brittle quality, which the defendant had not, did not, and could not use in his business for such purpose, from Germany, in the defendant's name, and they were sent directly to the place of business of the defendant, in a box which had not been opened; and on inspection they proved to be of a dry and brittle quality, not suitable for his business, and the defendant notified the plaintiff of these facts, and requested him to take them away, as they were utterly useless to him. The plaintiff refused to receive the same, and brought this action.

The facts in evidence were briefly as follows: The president of the company, as a witness, denied the contract as set up by the defendant, and insisted that his cause of action was correct, and he and plaintiff's witnesses testified that, in their opinion, these dry and brittle wafers were as suitable for the plaintiff's use in putting up said medicines as the tough and leathery ones; but none of them pretended to know what said medicine was, or what quality of catchet wafers was necessary to inclose and preserve it. The defendant testified to the contract as last above stated, and three or four of his witnesses testified that they were present near the telephone at the time, and heard what the parties said, and that the contract was as stated by the defendant; and several of his witnesses testified that they had worked for the defendant in putting up said medicine, and understood the business, and that the dry and brittle catchet wafers, so delivered to the defendant, were not suitable for such use, and were useless for such purpose, and that it required catchet wafers of a tough and leathery quality, not easily broken. In fact all the witnesses who pretended to understand what quality of catchet wafers was necessary for this particular business so testified. The defendant testified fully as to the quality of catchet wafer he needed in his business, and that the dry and brittle wafers were not suitable and could not be used for such purpose, and were entirely worthless to him, and that he had to procure from New York the tough and leathery quality necessary, in place of those he had so received from the plaintiff. It appeared in evidence, also, that the defendant had always used the tough and leathery quality of catchet wafers, and could use no other quality; and that the plaintiff had frequently furnished the defendant with this quality of wafer, and no other, and knew the quality the defendant used, and that he required in his business. The plaintiff company was engaged in the wholesale drug business, and the defendant

was a retail druggist, and the plaintiff had long dealt extensively in catchet wafers, and knew their various qualities. The testimony of all those who understood what quality of catchet wafers was needed in the business of the defendant was all one way,— that the quality delivered was not suitable. This fact, therefore, appears to have been conclusively established.

The learned judge of the court instructed the jury as follows: " Independent of any statement that may have been made, the law implies a warranty on the part of the seller that the goods shall be fit for the uses to which they are to be put, if he knows the purpose for which they are to be used. Mr. Von Baumbach says he knew they were to be used in making headache wafers. He knew that *Mr. Gessler* was engaged in manufacturing that article, and, he supposed, wanted these catchets for that purpose, so that he warranted their fitness for that purpose." This is a very clear and correct statement of the law of the case. This instruction alone entitled the defendant to a verdict; and yet the jury found for the plaintiff the full amount of its demand. It is proper to say that the testimony tended very strongly to sustain the defense. On the motion of the defendant, the court ordered a new trial. That the verdict was against the instructions of the court was sufficient ground for setting it aside. Juries must learn that in all cases they *must* take the law from the court. The jury is in the box to find the facts, and the judge is on the bench to declare the law. So careful and painstaking was the learned judge that, pending the motion for a new trial, he made a practical test of these two qualities of catchet wafers in the business of the defendant, to satisfy himself. After that he granted the order. This appeal is taken from that order, and this court is asked to reverse it as an abuse of judicial discretion. We must decline to do so.

*By the Court.*— The order of the circuit court is affirmed.