## STONER v. MAU.

PLEADINGS—LEGAL AND EQUITABLE RELIEF IN SAME ACTION—TRIAL—CONTRACT, CONSTRUCTION—WATER AND WATER RIGHTS—WRONGFUL DIVERSION, ACTION FOR—DITCHES—JOINT DITCHES—INSTRUCTIONS—BILL OF EXCEPTIONS—DISREGARD OF INSTRUCTIONS BY JURY—INCONSISTENT INSTRUCTIONS, IMMATERIALITY OF — CONFLICTING TESTIMONY PROVINCE OF JURY.

1. Under the code procedure, a party may ask and obtain several kinds of relief in the same action.

2. A petition which alleges a wrongful diversion of water to plaintiff's injury, and a threatened continuance of such wrongful acts, does not, for the reason that the prayer is both for damages and an injunction, state more than one cause of action.

3. In such case the right to equitable relief does not present the chief issue, since the right to damages does not depend upon the right to an injunction; and the defendant is not entitled to have the equitable issue first tried.

4. In determining the right to equitable relief, the court may submit the facts to a jury in an advisory capacity.

5. Plaintiff and defendant entered into a written contract whereby the latter was permitted to enlarge plaintiff's irrigating ditch, and it was agreed that after the enlargement the plaintiff should have the right to take from the ditch at all times five cubic feet of water (which was his original appropriation), and that all water flowing in the ditch in excess of said five cubic feet should be the property of defendant. *Held,* that plaintiff was entitled to the first five cubic feet of water conveyed through the ditch; and the defendant was without right to divert the same to plaintiff's injury.

6. Such contract did not require defendant to furnish and deliver to plaintiff the water to which he was entitled, but the obligation rested upon him to abstain from any willful act that might prevent that quantity of water from flowing down the ditch to plaintiff's land, where it was to be used.

7. Whatever right or interest defendant had in the ditch, he had no right to use or divert the water therein to which plaintiff was entitled to the latter's injury.

8. In civil causes written instructions, numbered, signed by the judge, and so marked or indorsed as to show which were given, refused or modified, and filed as the law prescribes, are constituted by the statute part of the record without being embraced in the bill of exceptions. Hence, such instructions upon which no exceptions are based may be examined to ascertain the entire charge of the court. (Whether their incorporation in the bill is necessary to bring an exception thereto into the record is expressly not decided.)

9. For convenience in diverting and conveying water for their use, respectively, from the same stream and the same point, plaintiff and defendant consolidated their ditches, under an agreement settling their relative rights both as to ditch and the water diverted thereby; and plaintiff was allowed by the contract his original appropriation as a first right to the water in the ditch. *Held,* that as against the defendant the plaintiff did not, by reason of such facts, abandon his right to the water formerly conveyed through his separate ditch.

10. Plaintiff's alleged water right being in issue under the pleadings, and the ditch by means of which his appropriation

had been made having been consolidated with the ditch of defendant under a contract providing for their joint use thereof, there was no impropriety or error in charging the jury that a water right is not abandoned by a change in the mode of diversion, and the use of a new ditch in place of one by which diversion was first accomplished, so long as the water was used without unreasonable cessation.

11. The contract for a consolidation of the separate ditches of plaintiff and defendant entitling the former to five cubic feet of water at all times from the new ditch, and allowing defendant the excess, it was not error, in a suit by plaintiff to recover damages for an alleged wrongful diversion by defendant in June, 1900, and an injunction to prevent further wrongful diversion, to charge the jury that plaintiff was entitled to five cubic feet of water from the ditch in June and July, 1900, and that if, during any portion of that time, the plaintiff was deprived of such water, or any part thereof, by the acts of defendant, and the plaintiff's crops were damaged by reason of such acts, if they should find that defendant did so act, then they must find for the plaintiff.

12. The statute (R. S., Secs. 908-914) providing a summary remedy through the appointment of a water distributer, where two or more joint owners of an irrigating ditch are unable to agree as to a diversion of the water, is not intended, nor does it operate, as a substitute for an action for damages or injunction by one of the owners in case of actual or threatened injury through a wrongful diversion by another owner. And an instruction in such an action that plaintiff cannot recover if the parties were joint owners of the ditch, as the statute had provided another remedy, is erroneous.

13. The plaintiff being clearly entitled to a prior right to a certain quantity of water flowing in a ditch, regardless of defendant's interest in the ditch, and the action being brought to recover damages for a wrongful diversion of that water by defendant, and an injunction against a further diversion thereof, a judgment for plaintiff will not be reversed on the ground that the jury may have disregarded an erroneous instruction to the effect that, since the statute had provided another remedy in such case, plaintiff could not recover if the parties were joint owners

of the ditch; said instruction being erroneous in stating that the statute had provided another remedy.

14. A contract between plaintiff and defendant authorizing the latter to enlarge the former's ditch, and entitling plaintiff to a prior right to a certain quantity of water flowing therein, and the defendant to the excess, after the enlargement, the ditch cannot be held to have been enlarged if it will not carry any greater quantity of water than before.

15. The interest of defendant in the ditch being immaterial to the issues in the case, for the reason that whatever that interest he would be without right to divert the water therein to which plaintiff had a prior right in any event, instructions given at request of the parties, respectively, as to what would or would not constitute defendant a joint owner in the ditch, although possibly inconsistent, will not, for that reason, cause a reversal of a judgment for plaintiff based upon a wrongful diversion of the water to which he was entitled.

16. Although an instruction for plaintiff may have embraced an erroneous interpretation of the contract as to what would give defendant an interest in the ditch, it cannot have operated prejudicially to defendant, since, notwithstanding his interest as claimed by him under the contract, he would be liable for wrongfully diverting, to plaintiff's injury, the water to which the latter was entitled by priority of right, and for such a diversion only, actual and threatened, the action was brought.

17. It is the province of the jury to consider and weigh conflicting testimony.

[Decided April 20, 1903.   On petition for rehearing, August 20, 1903.]                         (72 Pac., 193; 73 Pac., 548.)

ERROR to the District Court, Uinta County, HON. RICHARD H. SCOTT, Judge of First Judicial District, presiding.

Action by Frank A. Mau against John W. Stoner for damages and injunction on account of an alleged actual and threatened wrongful diversion of water from plaintiff's ditch. Judgment went for plaintiff, and defendant, alleging error, sought a reversal. The material facts are stated in the opinion.

*Hamm & Arnold* and *Beard & Ausherman,* for plaintiff in eror.

The jury failed and refused to follow the instructions of the court. Under the first instruction of the court, given at the request of the plaintiff in error, Stoner was not required to furnish Mau with five cubic feet of water, but was only required to allow that much water to run in the ditch past his (Stoner's) place. Under the second instruction the jury are told that the burden rested upon Mau to prove by a preponderance of the evidence that Stoner actually did prevent that amount of water from passing his premises, and that unless he had so proven, the jury were instructed that Mau could not recover. Under the third instruction, given at the request of the plaintiff in error, that if·the jury found that Stoner and Mau entered into an agreement by which their ditches were consolidated to be used in common, and that the consolidated ditch was constructed and completed in accordance with the agreement, that that constituted them joint owners in the enlarged ditch, and that Mau could not recover in this action. The fourth instruction given at the request of the plaintiff in error is as follows:

"You are instructed that if, under an agreement entered into between the plaintiff and defendant, their individual ditches were consolidated, that is, that a portion of each ditch was used for the purpose of making a new and enlarged ditch for the use of both parties in carrying water to their respective lands, and that such agreement was acquiesced in by the parties, and that for several years thereafter they both used water from the said enlarged or consolidated ditch for the purpose of irrigating their respective tracts of land, this would constitute the parties to this suit joint owners of the said ditch, and the plaintiff cannot recover in this action, the statute providing another remedy in such cases."

A comparison of these instructions with the evidence clearly discloses that the jury disobeyed the instructions and

disregarded the undisputed testimony on the most material points. Mau himself testifies that the ditches were consolidated; that the consolidated ditch was used in common for a period of three years without controversy, beginning with the year 1897. The testimony of witness Banks, called in behalf of the defendant in error, is to the same effect.

The plaintiff in error testifies to the consolidation and joint use of the ditch. Likewise is the testimony of Victor Forgeon and Aaron Stoner.

It is the undisputed testimony of all the witnesses that the ditch had been used in common by Frank A. Mau and John W. Stoner for at least three successive seasons, and during the same time that complaint is made that Stoner was not allowing five cubic feet of water to run by, two other land owners and irrigators between the plaintiff in error and defendant in error were using water at the same time. There is no evidence that Stoner did not allow the requisite amount of water to pass by him.

The verdict of the jury is contrary to the evidence and cannot support a judgment. It is so well settled as to need no citation of authority that when the jury fail or refuse to follow the instructions of the court, or render a verdict directly contrary to the undisputed testimony, it is error for which a reversal must be had. (11 Ency. Pl. & Pr., 47, *et seq.*)

Instruction No. 1, given at the request of the defendant in error, was erroneous and calculated to mislead and confuse the jury, because it introduced an issue which was not raised by the pleadings, and upon which there was no testimony. The instruction numbered 2 is erroneous, for the reason that it stated that Mau had a right to five cubic feet of water per second of time in the ditch in question during the months of June and July, 1900. Instruction No. 3 is erroneous in that it is not a correct interpretation of the contract between the parties. Instruction No. 4 is erroneous in that it misinterprets the contract and tends to mislead and confuse the jury.

The court erred in adopting the verdict of the jury and attempting to base a judgment thereon. There is an equitable issue which the jury could not try and which the court refused to separately consider at the beginning; and this equitable issue again becomes prominent when the court adopted the verdict of the jury. If the verdict was wrong, its adoption by the court was error. If the jury, in finding generally for the plaintiff below, found him to be the owner of the ditch, the judgment of the court that he was only entitled to the first five cubic feet of water flowing therein is not in harmony with the pleadings nor the verdict, and the judgment attempted to be based thereon cannot stand. (North Point Con. Irr. Co. v. Utah & S. L. Canal Co. (Utah), 63 Pac. Rep., 812.)

*J. A. Hellenthal* and *J. H. Ryckman,* for defendant in error.

Under the contract of May, 1897, Mr. Stoner did some work on the Mau canal, ostensibly, with a view of enlarging it and increasing its carrying capacity. As a part of this plan, apparently, he built a dam in the Mau canal, near its intersection with Spring Creek, and turned the water flowing therein into the ditch above mentioned, which was constructed by the defendant, Forgeon, and Aaron Stoner; and conducted the water through that ditch for a mile or more, and then turned it back into the Mau canal, as originally constructed. There is no authority in the contract for making this change in the mode of carrying the water, and the change was made by Mr. Stoner without consulting Mau or anyone else about it. But, however that may be, the principal question that arises here is: to what extent, if any, did Stoner increase the carrying capacity of this ditch? For if the carrying capacity of the ditch before the contract was made was five cubic feet per second, as Mr. Mau says it was, and the carrying capacity had not been increased by Mr. Stoner, Mr. Stoner could certainly acquire no right to the water flowing in the ditch under the contract. This

question was passed upon by this court, when the case was before it upon a former occasion. (Mau v. Stoner, 67 Pac., 618.)

Upon this evidence the question was submitted to the jury and the jury, by their verdict, found that the carrying capacity of the ditch was not increased. That the verdict of the jury is conclusive in the face of such a conflict of evidence is so elementary that it needs no discussion. (Ketchum v. Davis, 13 Pac., 15.)

The first error relied upon by plaintiff in error is that the jury failed and refused to follow the instructions of the court. In this connection we wish to call the attention of the court to the fact that none of the instructions referred to in the brief of plaintiff in error as instructions Nos. 1, 2, 3 and 4, are embodied in the bill of exceptions, and are, therefore, no part of the record. We know of no way by which the court's instructions can become a part of the record, so that they can be considered by the appellate court, except by bill of exception. If the plaintiff in error desired to make use of these instructions in this court it was his business to make them a part of the record by bill of exception; he having failed in this, these instructions are not before this court for any purpose. We do not concur in the view that these instructions, or any of them, correctly state the law. The first two instructions referred to, taken together, amount to just this: The jury were instructed that Stoner need not furnish Mau with five cubic feet of water, but was only required to allow that much water to pass his place in the ditch, and that Mau must prove by a preponderance of the evidence that Stoner did actually prevent that amount of water from passing his premises.

It is the testimony of practically all the witnesses that there was no water in the ditch at the Mau ranch at the time complained of. But, say counsel for the defendant, Aaron Stoner and Forgeon both testified that they took some water out of this ditch and they have not been made parties. These

men did testify that they took some water out of the ditch, but they did not, as counsel would have us believe, proclaim their own guilt in order to exculpate Mr. Stoner. They say, indeed, that they took some water out of the ditch, but they say that the water they took was their own water—water which belonged neither to Mr. Mau nor Mr. Stoner, and which had nothing to do with the Mau water, with the diversion of which Mr. Stoner is charged. Some time prior to 1897 Mr. Stoner, Mr. Aaron Stoner and Mr. Forgeon constructed a ditch, referred to in the record as the Stoner ditch, from Spring Creek to their respective lands, and a portion of the waters of Spring Creek was diverted and conducted to their lands by means thereby. It was this water, the right to the use of which they had acquired before 1897, and which they held independent of either Mr. Mau or Mr. Stoner, that, according to their evidence, they were using.

If, then, Aaron Stoner and Victor Forgeon had a water right in this lower ditch (referred to as the Stoner ditch) prior to 1897, it must be conceded that they could not lose such right by the acts of Mr. John W. Stoner, in turning the Mau water into this ditch at the head of the ditch and taking it out lower down. And if it be true that Forgeon and Aaron Stoner merely took their own water that had been flowing in the ditch for them ever since the construction of the ditch, prior to 1897, and if there was no water in the ditch at the Mau ranch, it must follow that Stoner diverted the Mau water, he being the only other party that took water out of the ditch. The jury, then, could find that the defendant diverted the water under this theory, or they could so find under the theory first suggested—that Aaron Stoner and Forgeon were taking the water under the directions of the defendant and as his agents. In either event the verdict of the jury would be sustained by an abundance of evidence. Again, the jury may have based their verdict on the testimony of Mr. Mau, in which he says that the water was practically all diverted

by the defendant at a point near the Cokeville bridge, that evidence alone being amply sufficient to sustain the verdict. The whole matter, then, resolves itself to this: Under the evidence the issues referred to in the court's instructions were properly submitted to the jury; and the jury found those issues against the plaintiff in error.

We will next see what the jury did in the way of following instructions Nos. 3 and 4, given at the request of plaintiff in error. To these instructions, there are two serious objections: First, there is no evidence in the record upon which to base them, or either of them; and, second, even if there were such evidence, the instructions do not correctly state the law. That one cannot be deprived of a jury trial in an action purely legal in its nature, such as an action of trespass on the case, under a constitution that guarantees a jury trial in civil causes, is fundamental; especially is this true where the title to the *locus in quo* is disputed, as it is in this case. (Bank v. Foster, 61 Pac., 466; 9 Wyo., 157.)

But what are the facts about this so-called consolidation, as they appear in the record? In 1897 the parties hereto entered into the contract that we have already somewhat discussed. Under this contract, Mr. Stoner acquired a right from Mr. Mau to enlarge the Mau canal. Thereafter Mr. Stoner, without the aid or consent of Mau, turned the water running in the Mau canal into the canal referred to as the Stoner canal, which had been previously constructed by the defendant, Victor Forgeon and Aaron Stoner, carried the water through this canal for a distance of a mile or more, and then turned it back into the original Mau canal. This agreement of May, 1897, which is in writing, is the only agreement entered into between these parties with reference to this ditch, and it gives Mr. Stoner no right to make this change in the mode of diversion.

If, then, Mr. Stoner turned the water out of the Mau ditch and back again into the Mau ditch, after permitting it to flow through the Stoner ditch for a distance, and did

this on his own account, without authority under the agreement of May, 1897, this much talked of consolidation would confer no rights on Mr. Stoner. It is a maxim of the law that no man shall take advantage of his own wrong. But, say counsel for plaintiff in error, Mr. Mau acquiesced in these acts of Mr. Stoner for nearly three years, and permitted Mr. Stoner to conduct the Mau water through the Stoner ditch for a distance of a mile or more all that length of time. We know of no rule of law that confers rights upon the wrongdoer because the injured party acquiesces in the wrong; except, indeed, where the acquiescence has been for the statutory period, and no such claim is made in this case. No doubt the defendant could have been restrained from making this unauthorized change in the mode of carrying Mr. Mau's water.

The agreement between these parties with reference to this ditch is in writing, the construction of a written instrument is a question of law for the court, and yet here the court submits the matter, at least in part, to the jury. The instructions, however, were given at the request of the plaintiff in error, so that he cannot and does not complain. And since the defendant in error is not seeking to have the judgment set aside, a further discussion of these instructions is unnecessary. Nor is there anything in the record, as we have seen, to indicate that the jury disregarded these instructions, however erroneous they might be; the jury simply viewed these instructions in the light of the evidence, and found the issues submitted by them against the plaintiff in error.

We desire further to call the court's attention to the fact that all these instructions were given by the court at the request of the plaintiff in error, which would seem to indicate that the plaintiff in error thought it proper to submit these issues to the jury. We do not think he ought now to complain because the jury found the issues so submitted against him. Nor do we concur in the views held by counsel, that the question whether or not the verdict of the jury

is in accordance with the instructions of the trial court, is a proper question for review by a court of last resort. The question before this court is not, is the verdict contrary to the instructions of the trial court,; but is the verdict contrary to law, and supported by sufficient evidence? If a verdict is not contrary to law, and is sustained by sufficient evidence, it must stand; and that this verdict is according to law and is supported by an abundance of evidence is apparent from a glance at the record.

In order that this verdict may stand, there must be evidence tending to establish three things: First, that the title or right of possession to the *locus in quo* is in the plaintiff; second, the trespass; third, the damages. That there is an abundance of evidence to establish the first two of these propositions has already been shown; and upon the question of damages the evidence is all one way.

The third error assigned deals with the instructions given by the trial court at the request of the defendant in error. We wish here to call the court's attention to the fact that the four instructions excepted to are the only ones that are made part of the record by the bill of exceptions. That appellate courts will not review the instructions excepted to, unless all the instructions given are before them, has been frequently decided. (Hogan v. Peterson, 8 Wyo.., 549; 59 Pac., 162; Miller v. State, 29 Pac., 136; 3 Wyo., 657.)

But, without waiving this point, we will briefly review the instructions complained of. By instruction No. 1, the jury are told that a change in the mode of diversion does not in itself work an abandonment of a water right. It is not contended that this is not a correct statement of the law, but it is contended that there is no evidence upon which to base such an instruction. It will be remembered that there was evidence that tended to show that in 1897 Mr. Stoner turned the water flowing in the Mau canal into the Stoner canal and then turned it back into the Mau canal a mile or more lower down; and also that the abandoned portion of the Mau canal was ploughed up by Mr. Stoner. Hence the propriety of this instruction.

It is urged that instruction No. 2 is erroneous because it states that for the purposes of this case the plaintiff, Mau, had a right to five cubic feet of water during June and July, 1900. During the years of 1893-94 and 1895, Mr. Mau took every step necessary to perfect a valid appropriation of five cubic feet of water, under the laws of the State of Wyoming, and nowhere in the record is his evidence upon this point disputed; nor is there anything in the contract of May, 1897, that gives Mr. Stoner any right to the first five cubic feet of water flowing in the ditch. The contract provides that Mr. Stoner shall become the owner of all water flowing in the ditch in excess of five cubic feet, and thus leaves the first five cubic feet for Mr. Mau. This, we think, disposes of the objection to instruction No. 2.

By instruction No. 3 the jury are told that if they should find from the evidence that Stoner complied with his part of the contract and did enlarge the ditch, even then Mau would be entitled to the first five cubic feet of water in the ditch. The contract provides that all water in excess of five cubic feet shall be the property of Stoner, but it in no wise disposes of the first five cubic feet flowing in the ditch. The right to the use of the first five cubic feet then remains where it was prior to the making of the contract—in Mr. Mau.

The objection urged to instruction No. 4 is that it does not properly construe the contract of May, 1897. Under this instruction Mr. Stoner acquires no right to the Mau canal itself, without reference to the water flowing therein, until he has enlarged it in accordance with the terms of the contract. According to the plain and express terms of this contract, Mr. Mau gives Mr. Stoner the right to enlarge the Mau canal to a sufficient capacity to irrigate 2,060 acres of land over and above its then carrying capacity, for a consideration of one hundred dollars. Nothing is said about the ownership of the canal until we get to the paragraph next to the last one, which provides as follows: "And it is agreed that said ditch, when so enlarged (to a

sufficient capacity to carry water enough to irrigate 2,060 acres of land over and above its capacity in 1897) shall be the property of the parties hereto in proportion to the amount of water used by them or their assigns to its present terminus." It is obvious, then, that if Mr. Stoner did not see fit to avail himself of his right to enlarge the ditch, and did not enlarge the ditch as provided for in the contract, he acquired no interest in the ditch itself under the contract. This same construction was placed upon this contract by this court, when this case was before it on a former occasion. (Mau v. Stoner, 67 Pac., 618.)

The fourth error assigned is, that the court erred in adopting the verdict of the jury and in entering judgment thereon. If the verdict is sustained by sufficient evidence and is in accordance with the law, the only thing left for the court to do was to render judgment on the verdict. When a jury returns a verdict in an action at law, the court must do either one of two things—it must set the verdict aside and order a new trial, or render judgment on it. When the verdict was returned it was binding on the court, and the court having refused a new trial, did the only thing it could do—render judgment on the verdict. The contention of counsel that this is a suit in equity, and that, therefore, the verdict was advisory only, is without foundation. When did an action of trespass on the case become a suit in equity? True, the prayer is for an injunction, as well as for damages; but that does not make an action on the case triable in equity. Before the distinction between courts of equity and courts of law was abolished, it would have been necessary, in a case of this kind, to first commence an action on the law side of the court, for the purpose of establishing the title, where the title is disputed, and for the further purpose of proving the trespass and the damages; after the action at law had been commenced, the plaintiff could commence an ancillary suit, on the equity side of the court, set up that an action at law had been commenced, and that the trespass complained of was irreparable in its nature, and

thereupon the court of equity would grant a temporary injunction, to remain in force during the pendency of the action at law; in the event that the plaintiff prevailed on the law side of the court, the court of equity would make the temporary injunction permanent, otherwise the bill would be dismissed. Under the practice in Wyoming, where the distinction between suits in equity and actions at law has been abolished, the plaintiff can frame his petition as he would at common law, and he can invoke the ancillary jurisdiction of the court of equity by adding to his petition an allegation to the effect that the damage occasioned by the trespass complained of is irreparable in its nature, and by adding to his prayer for damages a prayer for an injunction. This was done in the case at bar, and after the jury had returned their verdict the court rendered judgment on it and granted a perpetual injunction.

Another error assigned, under this same heading, is, that the court did not try the issues raised on the equity side of the court before trying the issues raised on the law side, as was requested by plaintiff in error. We dare say that even if this could properly be done, it would still be in the discretion of the court as to how he would proceed. But how could it be done? Strictly speaking, there were no equitable issues; all the issues raised were legal in their nature. The plaintiff alleges that he is the owner of the irrigating ditch in question, and that he has a right to the use of the water flowing therein; all of this is denied by the defendant. The first thing to be determined, then, is the plaintiff's title to the ditch, and the second thing is his right to the use of the water flowing therein. At no time since the permanent establishment of the court of equity has that court had jurisdiction to try disputed titles. During the early history of the court of equity, it had power to restrain waste; and out of this grew its jurisdiction to restrain trespass. This newly acquired jurisdiction was frequently exercised by Lord Elden, and since his time the power of the court of equity to restrain trespass, where

the title of the plaintiff is either not disputed, or has been established by a court of law, and where the trespass is continuous or the damage occasioned thereby is irreparable, has been firmly established. But in order to give the court of equity jurisdiction these two last named conditions must co-exist. It has been so frequently held by both the state and federal courts, that the jurisdiction of equity to restrain trespass is not an original jurisdiction under which that court can try the title itself, that we refrain from discussing this question any further. (Washburn v. Miller, 117 Mass., 376; Preston v. Smith, 26 Fed., 888; Old Telegraph Co. v. Central Co., 7 Morrison, 555; Lockhart v. Leads, 63 Pac., 52; Lewis v. Cocks, 23 Wall., 466; Clayton v. Shoemaker et al., 9 Atl. Rep., 635; Ashurst v. McKensie et al., 9 S. Rep., 262; Duncan et al. v. Holidaysburg, 20 Atl., 647; Watson v. Ferrell, 12 S. E. Rep., 724; McBride v. Board, 44 Fed., 17; Poindexter v. Henderson, 12 Am. Dec., 550; Smith v. Gardner, 53 Am. Rep., 342.)

The next two issues raised were: First, did the defendant commit the trespass complained of, and, second, to what extent was the plaintiff damaged? That these two questions are both legal in their nature needs no discussion. Add to this the fact that the courts have frequently held that a trespass of the character here complained of is from its very nature a continuous one, and that equity will interfere to prevent a wrong from ripening into a right, and what issue is there left for a court of equity to pass upon? None. All the court of equity can do in a case like this is await the result of the trial on the law side of the court, and then enter its decree in accordance with the judgment there rendered. That was done in this case.

*Hamm & Arnold* and *Cyrus Beard,* for plaintiff in error, on petition for rehearing.

As we understand the opinion in this case, it holds that where the trial court has given instructions to the jury which are erroneous, that the jury may disregard such instructions, and if they do so it is not error for which a reversal

must be had. To our minds that is not the law, and that the better reasoning is in favor of those decisions holding that the jury is bound to take the law as it is given them by the court, and that for the purposes of the case the instructions are the law of the case, whether right or wrong. The matter is discussed at some length in Instructions to Juries, by Blashfield, Par. 17-20.

On page 33, quoting from Lord Mansfield, it is said: "Upon the reason of the thing, and the eternal principles of justice, the jury ought not to assume the jurisdiction of the law." And again on the same page: "Another reason which might be urged with even greater force is the uncertainty in the law which would result from permitting the jury to disregard the instructions." The learned author in the same paragraph quotes from and cites a great many authorities in support of the position. On page 35 it is said: "To permit the jury to decide the law to be contrary to what they are told in the instructions has also been declared to be a violation of the Federal Constitution, and a number of state courts have also held that it is a violation of the state constitutional provisions," citing U. S. v. Morrison, 1 Curt., 23 (Fed. Cas. No. 15815), and numerous other cases. On page 42 it is also said: "While it is true that there are a few American decisions in which it has either been held or said that the jury are not bound to follow the instructions of the court, these decisions have been overruled, either expressly or impliedly by subsequent decisions in the same jurisdictions, and there is no longer any doubt existing as to the jury's duty in the premises," citing numerous authorities. The jury were instructed in this case that if they found that the parties had entered into a contract by which their ditches were united, and that they had both used the new or consolidated ditch for a number of years, such acts would constitute them joint owners, and that plaintiff could not recover in this action. There is practically no conflict in the evidence on this point, and the verdict is in direct conflict with the evidence and the instructions.

It is admitted by the court in its opinion that some of the instructions are inconsistent. This is reversible error. Instructions which are inconsistent or contradictory, when asked, should, of course, be refused, and the giving of such instructions is erroneous, and almost invariably held a ground for reversal. It is not for the jury to select from contradictory instructions those which correctly express the law. (11 Ency. Pl. & Pr., 145, and cases cited.)

In this case the inconsistency was on a grave point. The case as presented for the plaintiff, Mau, proceeded upon the theory throughout that Stoner had no interest in the ditch. The fourth instruction tended to strengthen that assumption, and was contradictory to and inconsistent with the instruction given at the request of defendant, Stoner, that they were joint owners. Who is to say that the jury adopted the correct view of the law? Can a court assume that a jury was not influenced by the erroneous or conflicting instruction? To warrant a reversal for contradictory instructions, it is enough to know that error may have intervened, and it has been said that a reversal cannot be refused merely because the record does not show affirmatively that injury has been done. (11 Ency. Pl. & Pr., 147, and cases cited.)

The reason for this salutary rule is stated in the same work on page 148, as follows: "The reason for the rule is obvious, for where the instructions on a material point are contradictory it is impossible for the jury to decide which should prevail, and it is equally impossible after verdict to ascertain what instructions the jury did follow." (11 Ency. Pl. & Pr., 148, and cases cited.)

The giving of a correct instruction upon a point will not obviate an error in an instruction on the other side when they are entirely variant and there is nothing to show the jury which to adopt. (Linen Co. v. Hough, 91 Ill., 63; Jones v. Talbot, 4 Mo., 279; Baker v. Ash, 80 Tex., 356; R. Co. v. Armstrong, 49 Pa. St., 193; R. R. Co. v. Milliken, 8 Kan., 651.)

The court evidently adopted as true the testimony of the witness who irrigated for Stoner, and said in his testimony that Stoner told him not to let Mau have any water. As that witness is to be believed in that particular, the court will not overlook the fact that the same witness said he let enough water go past Stoner's place for Aaron Stoner and for Vic Forgeon. If he let that much go down past his place, it was more than as much as the contract gave to Mau, or his land required; and as the court has already said: "We do not think that the contract is to be construed as requiring Stoner to furnish and deliver to Mau the water to which he is entitled, but it does, in effect, require him to abstain from any willful act that may prevent that amount of water from flowing down the ditch to Mau's land," etc. Now, if the record discloses that Stoner did let enough water pass his place to water all the land Mau had, how can he be mulcted in damages?

POTTER, JUSTICE.

The defendant in error, Frank A. Mau, recovered a judgment in the District Court in this action for the sum of two thousand dollars as damages for injuries alleged to have been sustained by him through the wrongful diversion of water from an irrigating ditch by the plaintiff in error; and the latter was perpetually enjoined from thereafter taking or diverting such water.

By his petition in the action, defendant in error alleges that he is the owner and in possession of certain lands consisting of three hundred and twenty acres, and in the year 1900 had growing on said land large and valuable crops of lucerne, native and tame grasses, oats, rutabagas, potatoes, garden stuff, small fruits and other products; that in 1893 he applied to the State Engineer for and obtained a permit to construct an irrigating ditch and to appropriate water from Smith's Fork for the complete irrigation, reclamation and cultivation of all of said land; and that in pursuance thereof he constructed a certain irrigating ditch and appropriated the water of said Smith's Fork, conduct-

ing the same through said ditch to and upon his land, and applied the same to the irrigation, reclamation and cultivation thereof; and that such appropriation and application of the water aforesaid had been continued by him during each succeeding season, whereby he had grown large and valuable crops of the aforesaid grasses, grains and vegetables. He also alleges the use and appropriation of the water for domestic and stock purposes; and that the same constitutes his sole water supply for all the purposes mentioned.

It is further alleged that on or about June 18, 1900, and ever since (the suit was commenced June 28, 1900), the defendant, John W. Stoner, without any right whatever, diverted all the water from said irrigating ditch and appropriated the same to his own use, and thereby deprived the plaintiff, defendant in error here, of the use thereof. On account of said alleged wrongful diversion it is averred that the various crops aforesaid were destroyed, the stock of plaintiff had been deprived of water, and he was also deprived of the use and benefit of the water for domestic and other beneficial purposes; and his land had been permanently injured. The damages suffered by the lucerne, oats and other products, respectively, the injury to his stock and land, and the damage occasioned by reason of the absence of water for domestic purposes are specifically set forth; and the total damages sustained are alleged to amount to $7,150.

It is also alleged that the defendant threatened to continue the diversion, which, if carried out, will render the land wholly unfit for tillage or cultivation and cause plaintiff irreparable injury. The prayer is for damages and for an injunction restraining any further diversion of the water.

The answer consists of a general denial, except that plaintiff's ownership and possession of the lands described in the petition are admitted.

In the motion for new trial, as well as in the petition in error, objection is taken to the denial by the court previous to the trial of a motion filed and submitted by the defendant

below that the equitable issue be first tried. Very little is said in relation to this matter in the brief for plaintiff in error—indeed, it is referred to only incidentally, and it is questionable at least whether as a specific ground of error it is not waived. The cause was tried to a jury, and a general verdict for the plaintiff below was returned, fixing his damages at two thousand dollars. The judgment, after reciting the verdict, states, "and the court being fully advised in the premises finds for the plaintiff generally and adopts the verdict of the jury. Now, therefore, it is found, ordered and adjudged by the court that the plaintiff do have and recover of and from the defendant the sum of two thousand dollars, together with his costs in this behalf incurred taxed at —— dollars, and it is further ordered and decreed that the defendant, his agents, employees and all persons claiming under him are hereby perpetually enjoined and restrained from taking or diverting any of the water of the plaintiff flowing in the canal as described in plaintiff's petition, to-wit: The Mau canal and the first five feet of water flowing therein."

It is too well settled to admit of controversy that, under the code procedure, a party may ask and obtain several kinds of relief in the same action. (Phillips on Code Pl., 199, 210; Bliss on Code Pl., 171; Pomeroy's Code Rem., 76-86; Getty v. Hudson R. R. Co., 6 How. Pr., 269; Akin v. Davis, 11 Kan., 580.) The authorities seem to be somewhat confusing and are possibly contradictory as to whether in such cases there are two causes of action, or in reality but one cause of action upon which more than one kind of relief is sought. Phillips lays down the rule that the different kinds of relief do not constitute separate rights of action; that there is but one primary right, and one delict, and these afford but one right of action, requiring but one cause of action for its statement, however many kinds of relief may be had. (Phillips Code Pl., 210.) And Pomeroy states that there is in fact no joinder of different causes; but only the union of remedial rights flowing from

one cause of action. (Pomeroy's Code Rem., 78.) We think that the case at bar presents but one cause of action, although damages were asked for the injury suffered and an injunction to restrain the continuance of the acts causing the injury. We cannot agree with the expressed theory of the motion that the main issue in the action was the right to equitable relief. The right to damages upon the facts alleged did not depend upon the determination of the right to an injunction. Both legal and equitable relief was prayed for. On the question of damages for the injuries sustained through the alleged wrongful acts of defendant, either party was entitled to a trial by jury. And the court, in the course of deciding upon the question of equitable relief, might submit the facts to a jury in an advisory capacity. (Otterson v. Chosen Friends H. L. & S. League, 7 Wyo., 89; Akin v. Davis, 11 Kan., 580.) That seems to have been the effect of the procedure taken in the case, for it is stated in the judgment that the court adopts the verdict of the jury and finds generally for the plaintiff, which finding must have had reference to the matter of the equitable relief demanded; since the jury found for the plaintiff on the question of damages.

There are cases doubtless where it would be quite proper, if not necessary, for the court to determine the equitable issues before the submission of the legal issues to a jury; such, for example, where a party seeks the reformation of an instrument and damages for its breach; the right to damages depending upon the reformation of the instrument. But it is not perceived in the case at bar that the right of the plaintiff to an injunction restraining a further diversion of the water constituted a condition precedent to his recovery of damages for the injuries already sustained. We think the court did not err in submitting the cause to a jury and in denying the motion referred to.

It is contended that the jury refused to follow the instructions of the court given at the request of the defendant below; that the verdict is contrary to the evidence; that cer-

tain instructions given at request of the plaintiff below are erroneous, and that the judgment is erroneous in that the court adopted the verdict of the jury. The proposition that the verdict is contrary to the evidence appears to be based upon the supposed failure of the jury to follow the instructions of the court; it being contended that upon the evidence under the particular instructions referred to the verdict should have been for the defendant.

It appears that each of the parties to this action had a ditch taking water from Smith's Fork, and that both ditches for some distance ran substantially parallel to each other. Prior to 1897 the plaintiff below had paid the defendant, Stoner, one hundred dollars for the privilege, as Mau testifies, of constructing his ditch through certain land, or, as Stoner testifies, for the privilege he sold Mau of connecting his ditch with the ditch owned by the former, and taking the water for his ditch therefrom. It is immaterial which statement is correct. The particular water right secured by Stoner was not shown, nor does it seem to be material to the issues in this case. He testified that he had a recorded water right for his ditch. The plaintiff, Mau, introduced in evidence his applications for permits to construct his ditch and to appropriate water for three hundred and twenty acres of land, and their approval; and he testified that he commenced the construction of the ditch in 1893 and completed it in 1895.

John W. Stoner, the defendant below and plaintiff in error here, Aaron W. Stoner and Victor Forgeon were respectively owners of certain tracts of land lying above the land of the plaintiff, Mau, along the line of his ditch and between his land and the place where the ditch connected with the stream and received its supply of water. We understand from the testimony that John W. Stoner and Aaron Stoner, prior to 1897, had obtained water to irrigate their lands through the Stoner ditch.

In 1897 the parties hereto entered into a written contract, duly signed and acknowledged, and which was also recorded. That agreement is as follows:

"This agreement made and entered into between Frank A. Mau of the County of Uinta and State of Wyoming, party of the first part, and John W. Stoner of the same place, party of the second part, witnesseth:

"That, whereas the party of the first part is the owner of three hundred and twenty acres of land situate about two miles south of Cokeville, in said county, and Gustave Mau is the owner of one hundred and sixty acres of land adjoining the same;

"And, whereas, the party of the first part has constructed a water ditch from Spring Creek to said land and is now the owner of the same;

"And, whereas, the party of the second part is desirous to enlarge said ditch and extend the same;

"And, whereas, the following named parties own the following named number of acres of land upon the line of said ditch and the extension thereof, to-wit: John W. Stoner, 860 acres; Charles Deloney, 640 acres; Cyrus E. Wheeland, 360 acres, and Victor Forgeon, 40 acres; Aaron W. Stoner, 160 acres.

"Now, this indenture witnesseth: That, in consideration of one hundred dollars, the party of the first part agrees that the party of the second part shall have the right to enlarge said ditch to a sufficient capacity to carry water sufficient to irrigate all of the above land and have the right to extend the same from its present terminus.

"And it is further agreed between the parties hereto that the party of the second part shall have the right at any time before the 12th day of June, 1897, to shut off the water from said ditch for the space of ten days.

"That, after the said 12th day of June, 1897, the party of the second part shall furnish in ditch at least three cubic feet of water to the party of the first part.

"The said party of the second part agrees to enlarge and extend said ditch, at his own expense (except that the first party agrees to furnish his services, with team, for fourteen days).

"The party of the second part agrèes to maintain and keep said ditch in repair for the term of one year after the completion of the enlargement thereof, and after the expiration of one year from the completion of the enlargement of said ditch each of the parties hereto agrees to bear his proportion of all necessary expenses in maintaining said ditch and keeping the same in repair in proportion to the amount of water used by them or their assigns.

"The party of the first part shall have the right at all times after the completion of the enlargement of said ditch to draw from said ditch through two opening or sluice gates, to be constructed by the party of the first part, five cubic feet of water.

"And it is agreed that, after the completion of the enlargement of said ditch, all of the ditch now owned by the party of the first part lying north of the juncture of said ditch with Stoner ditch and south of Spring Creek shall become the property of the party of the second part.

"And it is agreed that said ditch, when so enlarged, shall be the property of the parties hereto in proportion to the amount of water used by them or their assigns to its present terminus.

"It is further agreed that all water flowing in said ditch in excess of said five cubic feet shall be the property of the party of the second part."

The contract refers to a ditch of Mau from Spring Creek. We understand this to be the same ditch he claims to have constructed from Smith's Fork, and while the testimony is not as clear in explanation of the matter as it might have been, we are led to believe that the Spring Creek named was used by Stoner as part of his ditch, and that the waters of Smith's Fork were taken through a ditch into said Spring Creek, and then flowed immediately into the ditch built by Mau, or perhaps first into a part of the Stoner ditch branching off from Spring Creek and *then* into the Mau ditch.

It appears that Smith's Fork is a tributary of Bear River and flows in a westerly or southwesterly direction. Spring

Creek is also a tributary of Bear River and flows in the same general direction, being located south of Smith's Fork about two miles, at the place where the ditch in question comes into said creek.

The evidence discloses that, after the execution of the contract above set out, Stoner proceeded to enlarge the ditch, although it is contended that he did not in fact enlarge its capacity. At any rate he did some work upon it, and made it larger, at least in places, and in the progress of the work the two ditches—Stoner's and Mau's—were for a portion of the distance consolidated; a part of the ditch built by Mau being abandoned and the Stoner ditch used in place thereof. Whether the provision in the contract that, after the enlargement shall have been completed, all of the Mau ditch "lying north of the juncture of said ditch with Stoner ditch and south of Spring Creek shall become the property of the party of the second part," refers to the abandoned portion of the Mau ditch, or a portion of the enlarged ditch formerly used by Stoner, is not explained in the testimony with sufficient accuracy to afford us any very definite information. But we deem the matter of very little importance, if any, in this case.

There is considerable testimony on the question of the enlargement of the ditch by Stoner. It was endeavored to be shown on the part of Mau that Stoner had not increased the capacity of the ditch; and there is some testimony to that effect. Stoner himself testified that Mau did not complain of the work done by him, except in respect to one point on the ditch. After the work was done by Stoner in 1897, it appears that the one ditch, or consolidated ditch, as it is called in some of the testimony, was used by both the parties and by Aaron Stoner and Victor Forgeon each season, and apparently with very little, if any, conflict until June, 1900.

According to the testimony of Mau, he was engaged in 1900 in growing on his land the various crops already mentioned with the aid of irrigation by means of the ditch

aforesaid, and the water flowing therein, and on or about the 18th day of June he observed that practically no water was running down the ditch to his land. He went up the ditch to discover the cause, and found that Stoner was taking out nearly all the water flowing in the ditch, and conducting it through two sluice gates upon his land. He had some conversation with Stoner that day and also the following day about the matter, and demanded that he stop taking the water. Not receiving satisfactory responses, he said to Stoner that he would bring suit, and he testified that Stoner replied to the threat that he would bring suit: "That's just what I want you to do; go on; I'll fix you."

The person employed at the time by Stoner to irrigate his land testified that he was taking out of the ditch twice as much water as Stoner's land required; and that he did so under Stoner's instructions; that the latter directed him to turn all the water he could, so that Mau would not get any, stating that he had been wanting a law suit with him and he was going to break him. He testified, however, that he let enough water go through to supply Aaron Stoner and Victor Forgeon. Another witness also testified to threats previously made by Stoner to prevent Mau from getting any of the water flowing in the ditch.

On the other hand, Stoner testified that he had made no threats; and that at the time in question two-thirds of the water was passing his place. There was also other testimony on behalf of Stoner to the effect that there was water in the ditch at Mau's place when he complained of having none; but it is not clear that even the testimony produced by Stoner showed that the quantity of water to which Mau claimed to be entitled reached his land. It was also shown that at the same time both Aaron Stoner and Victor Forgeon were using water from the ditch. The defense attempted to discredit the testimony of the witness who took the water out of the ditch on Stoner's land by showing that since then there had occurred some difficulty between him and Stoner. We do not propose to refer to all the

testimony upon this branch of the case. Other witnesses, both for plaintiff and defendant, were examined on this point, and it is sufficient to say that there is some conflict in the testimony as to whether during the period in question—from about June 18 to July 3—Mau was able to get any water from the ditch; but the testimony is ample to sustain the conclusion of the jury and the court that he was deprived of the water, and that the same was caused by the acts of Stoner in diverting it. The same may be said respecting the proof of the damages to his crops and other damages suffered by Mau in consequence of the diversion of the water; although there is less conflict on that point.

Considerable testimony was admitted in behalf of both parties concerning the work done by Stoner for the purpose of enlarging the ditch. It was attempted to be shown by the plaintiff that Stoner had not in fact enlarged the ditch; and there is testimony that the capacity of the ditch was no greater in 1900 than it had been previous to the contract of 1897. The apparent object of the defendant was to establish that, in consequence of his enlargement and extension of the ditch, he had acquired an interest in it as provided by the contract. We fail to understand the relevancy of a large part of the evidence bearing on that subject. Assuming that Stoner had enlarged the ditch to the full extent contemplated by him when he entered into the agreement of 1897, Mau would clearly be entitled to receive out of the ditch at all times five cubic feet of water; and Stoner conceded in his testimony that Mau was entitled to the first five cubic feet of water flowing in or conveyed by the ditch; and in our judgment the contract is to be so construed. This suit was not brought to determine the relative rights or interests of the parties in the ditch. That was a secondary consideration and relevant only as affecting the rights of the parties to the water. It devolved upon the plaintiff to establish his right to the water alleged to have been diverted, and his right to have that water flow through

the ditch in question down to his land, where he could use it.

Whatever right or interest Stoner had in the ditch, he had no right to use or divert the water therein to which Mau was entitled, to the latter's injury. The contract provides that when enlarged Mau "shall have the right at all times" to draw from said ditch through two openings or sluice gates five cubic feet of water; and that all the water flowing in said ditch "in excess of said five cubic feet" shall be the property of Stoner. Thus by the terms of the contract Stoner recognized the ownership and right of Mau to the first five cubic feet of water, and agreed that the water to which he shall be entitled as against Mau shall be the excess over and above such five cubic feet.

We do not think that the contract is to be construed as requiring Stoner to furnish and deliver to Mau the water to which he is entitled, but it does in effect require him to abstain from any willful act that may prevent that amount of water from flowing down the ditch to Mau's land. Or perhaps it is more correct to say that, by reason of the facts, the law imposes that obligation upon him.

This brings us to a consideration of the instructions given to the jury. Before considering them, it will be necessary to dispose of a preliminary question affecting the record in respect to the instructions. The instructions given at the request of defendant are not embraced in the bill of exceptions, while those given at request of plaintiff are embodied in the bill. It is, therefore, urged that the instructions are not entitled to the consideration of this court. But all the instructions are returned with the original papers, and each instruction is numbered, noted as given and signed by the judge. This raises a question that we believe has not been directly decided by this court as to civil cases; although there may be found in some of the opinions expressions indicating that all instructions given or refused must be preserved by bill of exceptions to become part of the record. We have so held in criminal cases. (Van

Horn v. State, 5 Wyo., 501.)   But the statutory provisions
in the matter of instructions in respect to civil and criminal
cases differ in an important particular.

Section 3644, Revised Statutes, prescribes the mode of
jury trial in civil cases.   It provides that before the argu-
ment of counsel is begun the court shall give such instruc-
tions upon the law as may be necessary, which instructions
shall be in writing and be numbered and signed by the
judge.   The seventh and last paragraph of the section reads
as follows:  "When either party asks special instructions
to be given to the jury, the court shall either give such in-
structions as requested, or positively refuse to do so; or
give the instructions with modifications, and shall mark or
endorse upon each instruction so offered in such manner
that it shall distinctly appear what instructions were given
in whole or in part, and in like manner those refused, so
that either party may except to the instructions given or
refused, or modified or to the modification.   *All instruc-
tions given by the court must be filed, together with those
refused, as a part of the record."*

As the object of a bill of exceptions is to bring into the
record matters which otherwise will not constitute a part
of the record, it seems to be unnecessary in civil cases for
the purposes of review to embody the instructions in a bill
when they are in writing, numbered, signed by the judge
and so marked or endorsed as to show which were given,
refused or modified, and filed as the law prescribes.   The
statute expressly requires them to be filed *as a part of the
record.*   (Blashfield on Inst. to Juries, 370.)

Objection is raised to the first instruction given at the
request of plaintiff below on the ground that it introduced
an issue not raised by the pleadings and upon which there
was no testimony.   It seems to us that counsel misconceives
the nature of the instruction.   It charges the jury in sub-
stance that an abandonment of the appropriation of water
does not result from a change in the mode of diversion, and
the abandonment of the ditches by which diversion was

first made and the use of others in place thereof; and that if plaintiff had abandoned a portion of his ditch as first constructed and used another in place thereof, that fact would not affect his water right, so long as he continued the use of the water without unreasonable cessation. In view of the contract and the obligation of Stoner thereunder, there may be some reason possibly for the claim that the instruction introduced a matter not controverted by the evidence. But the plaintiff alleged that he had secured a water right and the answer denied the allegations of the petition in that regard. Under the pleadings, the right of Mau to the water alleged to have been diverted was put directly in issue. Much testimony was produced showing the abandonment of a portion of Mau's original ditch and the substitution of another channel for the conveyance of the water. Doubtless the instruction correctly states the law as an abstract proposition. We need not, however, enter upon any discussion of the question, nor decide it as affected by any other facts than those disclosed in the case at bar. For the convenience of the parties in taking water for their use respectively from the same stream and the same point of diversion, they consolidated their ditches under an agreement settling their relative rights both as to ditch and the water diverted thereby; and it is evident that as against Stoner, which is all that need be decided, Mau did not abandon his right to the water formerly conveyed through his ditch. It was claimed on the trial that the ditch, as it existed in 1900, was Mau's property, and that Stoner had no interest in it. We can perceive no impropriety or error in giving the instruction. We are unable to see that it could have the effect to mislead or confuse the jury.

The second instruction is objected to because it states that Mau had a right to five cubic feet of water per second of time in the ditch in question during the months of June and July, 1900. It is not pointed out in the brief why that statement is erroneous. The contract so provided; and Stoner

so admitted in his testimony. The instruction further informed fhe jury that if during that time, or for any portion óf the time, Mau was deprived of said water, or any part thereof, by reason of the acts of Stoner, and that Mau's crops were damaged by reasón of such acts, if they should find that Stoner did so act, then they must find for the plaintiff. The only objection urged against the instruction is that stated above. We think it correctly stated the situation as between the parties to the action.

The fourth instruction given at the request of the plaintiff is objected to on the ground that it misconstrued the contract. That instruction was to the effect that unless the defendant, Stoner, had enlarged the ditch, known in 1897 as the Mau canal, to a sufficient capacity to irrigate 2,060 acres of land, over and above its then carrying capacity, he acquired no interest therein. By that instruction the contract was construed as requiring Stoner to enlarge the ditch to the full extent authorized under the contract before he could acquire any interest whatever in the ditch. It is evident that the instruction was given in view of certain other instructions given at the request of defendant to the effect that if the ditch had been enlarged, and the ditches of the parties had been consolidated, and water used therein by both parties thereafter, they would be joint owners of the ditch, and plaintiff could not recover in this action, the statute having provided another remedy.

It seems to have been contended throughout the trial that if the parties were joint owners of the ditch the sole remedy of plaintiff was an application for the appointment of some person to distribute the water flowing in the ditch to the various owners according to their respective interests, as provided under the provisions of Sections 908 to 914, inclusive, of the Revised Statutes; and two of the instructions given at the request of defendant below adopted that theory. This doubtless accounts for much of the testimony elicited upon the subject of the work of enlargement claimed to have been performed by Stoner under the contract; and

accounts also, we think, for the fourth instruction given at plaintiff's request.

The theory that the plaintiff could not recover in the action in the event that the defendant and himself were joint owners of the ditch cannot be sustained. As the plaintiff in error requested the instructions that were given to that effect, he cannot complain that they were erroneous. And as they were erroneous, it is immaterial that the jury disregarded them. It is argued that the evidence clearly shows a consolidation of the ditches of the plaintiff and defendant, and the joint use of water from the same ditch—the ditch in question—from 1897 to 1900, inclusive, and that under the instructions of the court those facts constituted the parties joint owners of the ditch; and hence, under such instructions, the plaintiff was not entitled to a verdict, as they were instructed, the plaintiff in such case could not recover. It is evident, however, that the court did not regard the evidence as clearly showing joint ownership, in view of the court's construction of the agreement of 1897. For the jury were also informed that defendant acquired no interest whatever unless his enlargement of the ditch had been sufficient to irrigate the entire 2,060 acres of land which the contract permitted him to do. Hence, on the question of joint ownership, it was left to the jury to determine whether or not the enlargement had been such as to give the defendant an interest in the ditch, and hence sufficient to constitute them joint owners. It is possible that the fourth instruction given at plaintiff's request, construing the contract as requiring the enlargement to the full capacity permitted by the contract as a condition precedent to the acquirement of any interest on the part of defendant, is inconsistent with the instruction given at the request of defendant, to the effect that a consolidation of the former ditches of the parties and the use of water from the consolidated ditch in common by both parties thereafter, would render them joint owners of the ditch. But, if so, we think such inconsistency immaterial in view of the sole issues involved in the case.

It seems to us that the evidence shows that the separate ditches formerly used by the parties were consolidated in 1897, and that until the summer of 1900 thereafter both parties took water therefrom; the water previously appropriated by Mau flowing through the new or consolidated ditch. But there was some testimony to the effect that the consolidated ditch was of no greater capacity than Mau's original ditch.

However, assuming that Stoner had enlarged the ditch to the fullest extent permissible under the contract, and that he and Mau were joint owners in the ditch, that circumstance would not prevent a recovery by Mau in this action. The instructions in that respect were doubtless based upon the provisions already alluded to concerning the distribution of the water in an irrigating ditch jointly owned by two or more persons. (R. S., Secs. 908-914.) We are not aware of any other statutory remedy that could have been intended; and that statute does not provide a remedy for the injuries alleged to have been suffered by plaintiff, nor does it afford the relief to which he was entitled upon the facts alleged. That statute provides in substance that whenever two or more joint owners in an irrigating ditch are unable to agree relative to the division or distribution of water received through such ditch, any such owner or owners, or either of them, may apply to the District Court by a verified petition, asking for an order appointing some suitable person to take charge of the ditch for the purpose of making a just distribution of the water to the several persons entitled to the waters received through the ditch. A summons is required to be issued upon the filing of such petition, and a hearing is authorized before the court, the judge in chambers or the District Court Commissioner; and it is provided that the decision shall be final. The order authorized to be made by the court, judge or commissioner is one appointing some suitable person, not personally interested in the ditch, to divide and distribute the water of the ditch as in his judgment justice may require,

according to the rights of the several owners; and such appointee is given exclusive control of the ditch for the purpose aforesaid until he may be removed by the order of the proper court, judge or commissioner.

We do not think the statute is intended as a substitute for an action for damages, or injunction. It certainly provides no means whereby one who has suffered injury through the wrongful diversion of water by another may recover damages for that injury. And, although it may be true that by pursuing the remedy provided by the statute an injunction might be rendered unnecessary to prevent a continuance of the wrong and resulting injury, we cannot regard the statute as depriving the courts of their equitable jurisdiction in such cases. There is nothing in the statute referred to indicating that it was adopted as an exclusive remedy in cases of disagreement among joint ditch owners.

The instruction to the effect that in case the jury found the parties to be joint owners of the ditch the plaintiff could not recover in the action being erroneous, we would hardly feel justified in reversing the judgment on the ground that the instruction was disregarded.

It is unnecessary to decide in this case whether or not the fourth instruction given at request of plaintiff embraces an erroneous interpretation of the contract. Conceding the instruction to be erroneous, it could not have operated prejudicially to the plaintiff in error. Notwithstanding the fourth instruction, the jury were informed by the third instruction requested by plaintiff that, even though they should find that Stoner did so enlarge the ditch, the plaintiff was entitled to the first five cubic feet of water flowing in the ditch, and that was a correct statement of the law under the contract and the evidence. Conceding that Stoner had acquired an interest in the ditch, he was clearly without right to divert to Mau's injury the first five cubic feet of water flowing therein. If he wrongfully diverted that water and Mau suffered damage thereby, it is no defense in this action that Stoner is a joint owner of the ditch.

On the other instructions the case was fairly presented to the jury. They were instructed that the defendant was not required to furnish five cubic feet of water per second of time to the plaintiff, but was required to allow that amount of water to flow through the ditch past his land; and that instruction was given at request of defendant, the plaintiff in error here. They were also instructed that if the plaintiff had failed to prove by a preponderance of the evidence that defendant prevented the above mentioned amount of water from flowing through the ditch during the time plaintiff claimed to have been deprived of the water he could not recover; that the burden rested upon plaintiff to prove that defendant prevented the water from flowing through the ditch past his premises, and if plaintiff had failed to establish that fact the verdict should be for the defendant.

The issue presented for determination in this action was not primarily the ownership of the ditch. Evidence upon that matter was no doubt admissible as tending to show the right of the plaintiff in error, Stoner, to divert any of the water conveyed through the ditch. The questions at issue were whether plaintiff in error had tortiously diverted water from the ditch to which Mau was entitled, to his injury and damage, and had threatened to continue such acts under such circumstances as would render it proper and equitable to restrain the same.

We are unable to perceive any prejudicial or reversible error in the record, and the judgment will be affirmed.

*Affirmed.*

CORN, C. J., and KNIGHT, J., concur.

### ON PETITION FOR REHEARING.

POTTER, JUSTICE.

On the former hearing the judgment of the District Court in this cause having been affirmed, plaintiff in error applies for a rehearing; and the chief ground asserted in sup-

port of the application is that a reversal ought to follow from the alleged failure of the jury to accept the instruction of the court to the effect that if the ditch in question had been enlarged, and the ditches of the parties had been consolidated, and water used therein by both parties thereafter; they would be joint owners of the ditch, and the plaintiff could not recover in this action, the statute having provided another remedy. That instruction was given at request of plaintiff in error, and if erroneous, he is in no position to complain of it. In our previous opinion we endeavored to show that it erroneously construed and applied the statutory provisions relating to summary proceedings for the distribution of water in partnership ditches, in case of dispute; and we said that the instruction, being erroneous, it was immaterial that it was disregarded, and that we would not feel justified in reversing the judgment on the ground that it was disregarded by the jury. We referred, however, to another instruction given at the request of defendant in error, construing the contract between the parties as requiring the plaintiff in error, as a condition precedent to his acquirement of any interest in the ditch, to have sufficiently enlarged its capacity so that it would carry enough water to irrigate the entire quantity of land permitted by the contract, in addition to its former capacity. We declined to decide whether that instruction embraced a correct interpretation of the contract, deeming it unnecessary to do so, for the reason that, whatever the interest in the ditch held by plaintiff in error, defendant in error was entitled to the first five cubic feet of water flowing in the ditch, which could not be diverted to his injury by plaintiff in error; and the jury were so instructed.

There was evidence tending to show that defendant in error did not receive the water to which he was clearly entitled under the contract, and that his failure to receive it was caused by its diversion by plaintiff in error. We think it evident that the verdict was not based upon the diversion by plaintiff in error of the water in the ditch over and above

the first five cubic feet; since the proof on behalf of defendant in error was to the effect that he received no water whatever; and since the instructions were to the effect only that he was entitled to five cubic feet of water, and that if he was deprived of that water by the acts of plaintiff in error, and his crops were damaged in consequence thereof, he was entitled to recover. Moreover, that amount of water was substantially the quantity he-claimed by appropriation.

It seemed to us, therefore, and we adhere to that opinion, that it was immaterial to any issue in the case whether plaintiff in error was entitled to divert any water flowing in the ditch over and above the first five cubic feet. Hence, it was considered unnecessary to consider the correctness of the fourth instruction for defendant in error, interpreting the contract as aforesaid. Conceding its incorrectness, plaintiff in error was not prejudiced thereby. We referred to it then, however, to show that, in view of its statements, the jury may have found that the ditch had not been enlarged, and that the ditches of the parties had not in fact been consolidated; and that, in the event the jury so found, there may not have been a disregard on the part of the jury, as they understood it, and as we think the court intended it to be understood, of the instruction given at request of plaintiff in error above referred to.

It was not intended in our former opinion to hold that the jury clearly disregarded any of the instructions. But in view of the peculiar character of the instruction under consideration, we expressed the opinion that, conceding it to have been disregarded, that fact would be deemed immaterial and not justify a reversal of the judgment. Possibly our language was broader than was necessary and may be construed as holding that a disregard by the jury under any circumstances of an erroneous instruction is immaterial, where the verdict is right upon the law of the case. Manifestly, it was not required that we go to that extent.

There is a direct conflict in the authorities on that prop-

osition.  In Iowa, California, Nebraska, South Carolina and Montana it is held that, whether an instruction contain a correct statement of the law or not, it is the duty of the jury to follow it, and that an evident failure to do so by returning a verdict contrary to it will authorize a new trial, and the reversal by the appellate court of a judgment based upon such verdict.  (14 Ency. Pl. & Pr., 787, note 3, and cases cited.)

The courts of several other states, on the other hand, announce and apply a contrary·doctrine.  (Id. note and cases cited.)  And it is maintained by much respectable authority that where a verdict is clearly right upon the evidence, and the whole law of the case, a verdict will not be set aside on the ground that it is in conflict with an erroneous instruction.

In Hammill Fire Escape Co. v. Davis, 64 Ill. App., it was said that a part of the verdict seemed to have been contrary to the instruction of the court as to the sufficiency of proof, but if the court, on motion for a new trial, was convinced that the jury took a more correct view, the motion for new trial was properly denied.  In Georgia, where the trial court had erroneously instructed the jury on the subject of the bar of the statute of limitations, the Supreme Court, after stating the correct rule, said: "And the charge of the court to the contrary was, itself, wrong; and, if wrong, it was no error in the jury not to follow it. Their finding contrary to this charge, then, is not a ground for a new trial.  On the motion for the new trial the court, itself, became conscious of its error, and admitted it." (Brock v. Garrett, 16 Ga., 487.)

In Missouri it is held that if, upon the pleadings and undisputed facts, the judgment is for the right party, there can be no reversal, no matter what errors intervened upon the trial, and the court in one case said: "Then, upon the same principle, if the judgment is for the right party upon the undisputed or admitted facts in the trial court, that court should not disturb the verdict and judgment thereon,

notwithstanding error in instructions made by it." (Homuth v. Metropolitan St. Ry. Co., 129 Mo., 629. See also Howard v. Miner, 20 Me., 325; French v. Stanley, 21 Me., 512.)

A very full and able discussion of the matter by a court holding that, whether an instruction be right or wrong, a verdict that disregards it should be vacated, is to be found in Murray v. Heinze, 17 Mont., 353. In that case it is stated that the instructions under consideration affected the vital issues of fact in the case; and as it was the law of the case, as far as the jury were concerned, they had no right to disregard it, and their verdict contrary thereto was "against law," notwithstanding that the instruction may have been erroneous; and the action of the trial court in setting aside the verdict was held to have been justified.

There can be no doubt but that the jury is bound to take the law from the court; and that they have no right to determine the law for themselves adversely to the instructions of the court. This may be conceded to the fullest extent, yet should it necessarily follow that in all cases, and under all circumstances, a new trial ought to be granted where the duty of the jury in that respect may seem to have been violated? We are not prepared to say, nor do we conceive it necessary in the present instance to decide, that cases may not arise where a judgment should be reversed on the sole ground that it is based upon a verdict rendered contrary to the instructions of the court, even though such instructions may have been erroneous.

An examination of the authorities will disclose that they are to be distinguished from the case at bar. In Nebraska, where a judgment was reversed because the verdict clearly violated the positive instruction of the court, the instruction was that there could be no recovery in the case, upon the evidence, for more than nominal damages; but a verdict was returned for $35 damages. (Aultman v. Reams, 9 Neb., 487.)

In the case of the Charles Baumback Co. v. Gessler, 79

Wis., 567, the Supreme Court of Wisconsin said that the fact that the verdict was, against the instructions of the court was sufficient ground for setting it aside. But in that case the court held the instruction to contain a clear and correct statement of the law, and entitled defendant to a verdict, and the testimony tended strongly to sustain the defense, and it is evident that the point relied on by the defense, if sustained, was a good defense in law.

In the leading California case, it was contended that the jury, in rendering a verdict for only $600, utterly disregarded the instructions of the court, as applied to the facts admitted by the pleadings and the evidence in the case. (Emerson v. County of Santa Clara, 40 Cal., 543.)

The leading case in Iowa, and possibly on this subject, is Savery v. Busick, 11 Ia., 487. In that case the trial court charged the jury, practically, that they should find for the defendant. Notwithstanding such instruction, a verdict was returned for the plaintiff; and a new trial was granted by the trial court. The order granting the new trial was appealed from. The court refused to review the case until tried upon the law as expounded by the court, and said: "Whatever may be our view of the law of this case, it is impossible for us to express it, or consider the questions presented, without going behind the action of the jury in trampling upon the authority of the court, and thereby giving some countenance to their assumption. This we are unwilling to do, even by the slightest implication." It is to be observed that the instruction in the case held that, under the law, there was no liability on the part of the defendant. In Scott v. Morse, 54 Ia., 732, however, it was held that, on the ground that the verdict is opposed to the evidence and instructions, the appellate court will not reverse an order denying a motion for new trial, where the evidence and instructions are not pertinent to any issue made in the case.

Now, in the case at bar, the instruction did not affect the liability of plaintiff in error for the injury complained of

in some form of action, but its effect is that, although the jury may find that there had been an unwarranted diversion of the water to which defendant in error was entitled under the contract, and that the latter had been injured thereby, if the facts therein stated were found by the jury to have been established, then there can be no recovery in this action, because another remedy is provided by statute.

As this was not a correct statement of the law, for the reason that another remedy had not been provided by statute, and as the jury upon what we have deemed sufficient evidence found the facts favorable to defendant in error that entitled him to recover, it is not clear to us that the judgment ought to be reversed upon the ground that the instruction may have been disregarded.

It must be understood, however, that we did not intend to base our conclusion in the case upon the principle that the verdict would not be disturbed for violating the instruction which we deemed to be erroneous. Indeed, it is not clear that it was disregarded. There was some evidence to the effect that the capacity of the ditch was not increased at all by the work done on it by plaintiff in error. We stated in the former opinion that the evidence seems to us to show a consolidation of the ditches of the parties, but we also referred to the presence of testimony denying the enlargement of the capacity of the ditch, independent of the fourth instruction. There was a conflict on this matter, and if at all material, it was for the jury to determine. Assuredly it will not be contended that the ditch had been enlarged if it would not carry any greater quantity of water than before.

In the instruction now being considered, one of the facts mentioned as necessary to a finding that the parties were joint owners was that the ditch had been enlarged. In view of the conflict in the evidence as to the practical result of the work done on the ditch by plaintiff in error, it may be that the jury found upon the fact of enlargement against the claims of plaintiff in error, and in that view of the case

it cannot be said that the verdict in any way violated the instruction.

Counsel seem to think that this court admitted an inconsistency in the instructions in this respect. But an examination of our opinion will show that we merely stated that it may be possible that plaintiff's fourth instruction was inconsistent with a portion of the defendant's instruction referred to. We said that, if so, the inconsistency was not material, in view of the sole issues in the case; and that seems to us to be a correct view of the matter. Counsel, and possibly our language in the former opinion may have warranted it, lose sight of that part of the instruction requested by plaintiff in error, which made the fact of enlargement a condition of joint ownership; and of the evidence that was given upon the theory that the ditch in some places was not made larger, and for that reason it would not carry any more water than before the alleged enlargement. We express no opinion as to the weight to be given that testimony, since that is a matter that was properly left to the jury to determine. We are inclined to regard it as immaterial, but allowing it to be considered did not injure plaintiff in error, since his case was presented on the theory that he had enlarged the ditch, and thereby had become an owner in the ditch; and that such fact constituted a sufficient defense.

It is stated by counsel that the court evidently adopted as true the testimony of the irrigator employed by plaintiff in error; and that under his testimony it appeared that enough water was allowed to pass the premises of plaintiff in error to furnish defendant in error all that he was entitled to. This court did not accept as true or disregard as false the testimony of any witness. The testimony was conflicting, and it was the province of the jury to consider and weigh it. We merely held that there was sufficient evidence to sustain the verdict of the jury.

We do not think a rehearing can subserve any useful purpose, and it will be denied.

To avoid a possible misunderstanding of our former opinion upon one point not touched upon in the present opinion, we deem it proper at this time to offer a word of explanation. We held that the instructions to the jury in civil cases, when they are in writing, numbered, signed by the judge, and so marked or indorsed as to show which were given, refused or modified, and filed as the law prescribes, were constituted by statute part of the record without being embodied in the bill of exceptions. But the decision was intended to go no further than the facts of the case warranted. The instructions considered in discussing the question were not those which had been excepted to; but were the instructions given at request of the plaintiff in error, and to which, therefore, he had not objected. The question was whether we could examine them to ascertain the entire charge of the court, or whether they were out of the record. The question was not involved whether the bill should show the exceptions to instructions where error was assigned thereon, and whether to bring such exceptions into the record it is necessary to embody in the bill the instructions excepted to. That procedure was adopted in this case, and hence nothing that we said was intended to hold that procedure to be unnecessary, nor, indeed, was the point in any way decided. It seems to be held in Ohio that to authorize a review of exceptions to instructions, or to a refusal to instruct, the charge as given or refused, with the exception to it, must be embraced in a bill of exceptions. (Lockhart v. Brown, 31 O. St., 431; Fleischman v. Shoemaker, 2 O. Cir. C., 152.)                    *Rehearing denied.*

Corn, C. J., and Knight, J., concur.