**Nellie WALLIS and Dan Wallis,**
**Appellants (Defendants),**

v.

**Abner LUMAN, Appellee (Plaintiff).**

**No. 5402.**

Supreme Court of Wyoming.

March 23, 1981.

Hugh B. McFadden, Jr., of Corthell, King, McFadden, Nicholas & Prehoda, Laramie, signed the brief and appeared in oral argument on behalf of appellants.

Steve D. Noecker of Johnson, Noecker & Noecker, Rawlins, signed the brief and appeared in oral argument on behalf of appellee.

Before ROSE, C. J., RAPER, THOMAS and ROONEY, JJ., and JOHNSON, District Judge.

RAPER, Justice.

In June, 1976, the appellee-plaintiff initiated an action in the district court to preliminarily and perpetually enjoin the appellants-defendants (mother and son) from: 1. interfering with the flow of water in the Lord Ditch used by appellee for irrigation purposes; 2. interfering with appellee's turning on and off the headgate of the Lord Ditch; 3. interfering with appellee's

maintenance of the ditch; and, 4. for damages of various kinds. A preliminary injunction was issued after a lengthy hearing on July 6, 1976.[1] Appellants' answer took issue with appellee's claims and counterclaimed for damages arising out of past allegedly negligent and improper maintenance and use of the Lord Ditch which traverses appellants' land. After all issues were drawn, a trial was had, in June, 1980, to the court sitting without a jury on the issue of a permanent injunction and damages. The trial judge, in specific terms, perpetually enjoined the appellants from any interference with the appellee's reasonable access to and use of the Lord Ditch and awarded damages to appellee of $6,484.00 including $3,000.00 punitive damages, all without prejudgment interest and costs in the sum of $187.20. Appellants' counterclaim was denied.

In the order in which we shall dispose of the questions, appellants present for review: 1. Does the existence of a water right carry an absolute right to transport that water through means of conveyance located on the lands of another? 2. Were damages properly awarded for seed purchased by plaintiff? 3. Does the evidence support the award of $1,750.00 to plaintiff for farming expenses for the year 1975? 4. In view of plaintiff's neglect or refusal to act to relieve defendants' distress and problems with overflow from the Lord Ditch during the wintertime, was the denial of defendants' counterclaim proper?

We will affirm.

## I

In order to more effectively explain the full factual landscape of this litigation, the sketch which follows may be helpful. Other than as to land boundaries, it is not drawn to scale. The location and meandering of Pass Creek, the Lord Ditch, the Coyote Ditch and other features shown are reasonably representative, for practical purposes, of the exhibits and testimony appearing in the record.

What follows in this narrative is for the most part gleaned from the trial on the matter of a permanent injunction and damages. The appellee acquired his land, 160 acres, in 1965 by warranty deed from the Ravenscroft Cattle Company, "together with all water and water rights, ditches and ditch rights thereunto belonging or in any-

1. The trial court's "Order Granting Temporary Injunction" in pertinent part:

"IT IS THEREFORE ORDERED, adjudged and decreed by the Court that the Defendants, their agents, employees, attorneys or associates be and they are hereby restrained from in any way interfering with the flow of water from Pass Creek through the Lord Ditch.

"IT IS FURTHER ORDERED, adjudged and decreed by the Court that the Defendants shall forthwith unlock and open the headgate to the Lord Ditch and to remove the earthen dam placed therein by them within the last sixty (60) days at a point within 100 yards of the East-West Center Line of Section 34, Township 20 North, Range 83 West of the 6th P.M., Carbon County, Wyoming and to restore the banks of the Lord Ditch in the same condition as before the said dam was made and so as not to interfere with the free flow of the water therein.

"IT IS FURTHER ORDERED that the Plaintiff take no affirmative action concerning the flow of water in the Lord Ditch which is not expresly [sic] sanctioned by the Water Commissioner of the State of Wyoming under whose jurisdiction said ditch is located.

"IT IS FURTHER ORDERED that this injunction shall become effective upon Plaintiff posting with the Clerk of this Court a bond to indemnify the Defendants against loss in the sum of Five Hundred Dollars ($500.00) and that the Clerk of this Court shall endorse this judgment with the date and time of filing of such undertaking. This Order shall remain in effect until furter [sic] order of the Court."

wise appertaining thereto, together with all buildings and improvements thereon situate, subject, however, to exceptions and reservations of record." The water right claimed by the appellee is shown by the Proof of Appropriation of Water, filed June 15, 1891, from the records of State Engineer. It establishes a blanket water right for "300 acres [in the] N$^2$ SE$^4$ S$^2$ NE$^4$ N$^2$ SE$^4$ N$^2$ SW$^4$ S$^2$ NW$^4$ Sec. 34 Tw 20 N83 [sic]," diverted from Pass Creek through the Lord Ditch, the construction of which was started in April of 1885 and completed in April 1886 with the water being first used in the summer of 1885. The parties to the Proof of Appropriation, Archibald Campbell and James H. Hammond, agreed to an equal diversion of water from the ditch. The water right was regularly adjudicated. In the absence of more detailed title information[2] the conclusion is present and it is acknowledged by appellants that appellee has title to the Campbell or Hammond land covered by the appropriation to the extent of his claim. This will be further developed in this opinion.

After acquisition of his Section 34 land in 1965, appellee, in order to irrigate some 128 acres of land, rearranged his farming system by leveling and ditching. He then commenced working on plans for cleaning out the Lord Ditch. He contracted machinery to do the work, contacted Dan Wallis, one of appellants, and explained what he was about to do, and with permission went ahead. After working about three days on the Lord Ditch, and within three quarters of a mile from completion, he was chased off the land by the appellants and eventually had to remove the machinery. Shortly thereafter, appellants constructed a dam across the Lord Ditch just below the south boundary of appellee's land which shut off the flow of water onto appellee's land—the water flow is northerly from its diversion point on Pass Creek.

Thereafter appellants initiated water right abandonment proceedings against appellee but their differences, at that point, were settled, the abandonment proceedings dismissed, and they entered into an agreement:

"We the undersigned hereby agree to the following:

"In exchange for 160 acres known as The Weaver Place, described SW ¼ of Sec. 28, T20N, R83W for the sum of $30 per acre plus cost of well drilled we agree to release to Abner Luman the right to irrigate approximately 130 acres of land out of the Lord Ditch described as E ½ of NW ¼, W ½ of NE ¼ of Sec. 34, T20N, R83W.

"Both parties agree to prorate the cost of 3 drops in the Lord Ditch.

---

2. Nor does it appear anywhere that any action was ever taken under § 41–6–303, W.S.1977:

"Unless the owners of ditches, canals and reservoirs make a record as herein provided, or have a record thereof made in some other manner, showing the relative ownership of each interested party in such irrigation works, said interests shall be established by the ratio between the water right of each water user to the total water rights adjudicated under such irrigation works. The relative interests of joint owners shall, therefore, be fixed by the issuance of the final certificate of appropriation as the same appears of record on the date of the passage of this act or as they shall hereafter be recorded in the office of the board of control and in the office of the respective county clerks, and no action for the recovery of the title to such irrigation works can be brought after ten (10) years from the date when the final certificates of appropriation have been recorded in the office of said county clerk; provided, that during such ten (10) years the interested water users as mentioned in the final certificates of appropriation, or their successors, have had continuous, open, adverse and undisputed possession of such irrigation works. Every conveyance of a ditch, canal or reservoir, or any interest therein, shall hereafter be executed and acknowledged in the same manner as a conveyance of real estate and recorded as herein provided, and any such conveyance which shall not be made in conformity with the provisions of this act, shall be null and void as against subsequent purchasers thereof in good faith and for a valuable consideration."

"Abner Luman agrees to put in the flume to measure water in 130 acres of land described.

"Signed:<br>
"/s/ Nellie Wallis<br>
"/s/ Abner Luman<br>
"June 24, 1967 /s/ Dan L. Wallis<br>
"Witness:<br><br>
"/s/ Donald L. Ellis<br>
"/s/ Laura Nell Ellis"

The three drops were eventually, in 1974, installed by appellee. Drops are devices to divert water out of a ditch. During the course of installing the drops, appellee removed the 1965 dam. This work was not done until 1974 because appellants had done nothing about it. Also in that interim period appellee did considerable work—about 1,000 hours leveling and preparing his land for cultivation and was able to get limited water onto his land through the Coyote Ditch, which also diverts from Pass Creek. The water was received under a temporary arrangement, with permission of the local water commissioner, the details of which do not appear in the record and are not at issue. The measuring flume was installed shortly before the 1980 trial.

Appellants irrigated their land in 1975 through the Lord Ditch but again erected a dam to keep water off appellee's land. Further records from the State Engineer's office show that the appellants attempted to obtain a declaration of abandonment from the State Board of Control of 118.6 acres of the appellee's water right in Section 34, Township 20N, Range 83W, but failed in their proof. Findings of Fact, Conclusions of Law and Order of the Board of Control denying the petition of appellants was entered on September 12, 1978. The abandonment proceedings show that Pass Creek went dry sometime in 1975 and appellants prevented appellee from using water out of the Lord Ditch. This was confirmed by trial testimony. This injunction action was started in 1976 prior to disposition of the abandonment proceedings but not finally tried until June, 1980. The trial judge properly considered proceedings from the earlier hearing for a preliminary injunction held in 1976, as allowed by Rule 65(a)(2): "* * * any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. * * *" In passing, however, it is noted that there is much repetition in the 1980 trial of what transpired in the 1976 hearing.

The trial judge's letter opinion, filed and forming a part of the record, best describes the evidence developed during the course of the trial which led to his award of damages. Under Rule 52(a), W.R.C.P., it is provided that the trial court may make special findings of fact by written memorandum. An explanation of the reasons forming a basis for a trial judge's judgment is always most helpful to this court and is encouraged. While the judgment entered here makes ultimate findings, the memorandum has been most helpful in clarifying the case. The judge found:

"He [appellee] is certainly entitled to one-half reimbursement for drops installed in 1974, in the sum of $130.00. He engaged in the farming preparation of the land in 1975, computing his reasonable expenditures for machinery at $25.00 per hour for ten hours over 7 days, or a total of $1,750.00, for which he is entitled as damages. This activity was conducted in reliance of the availability of water of which he was deprived by the action of the defendants. The plaintiff further expended money for the purchase of seed (EX. # 6) in the sum of $504.00, which, though was acquired after any reasonable time would be allowed for growing, would have nevertheless been available for planting during the spring of 1976. This should be allowed.

"The actions of the defendants terminated the plaintiff's use of the water by damming the Lord Ditch on May 31, 1976. The water was restored to him on June

3. The parties and court mix up their terminology describing the 1976 order enjoining interference by appellants with use by appellee of the Lord Ditch. Reference to Rule 65, W.R.C.P., makes it clear that the court entered a preliminary injunction to be in effect until trial on the issue of a permanent injunction.

18, 1976, as a result of a temporary restraining order [3] issued that date. The plaintiff was effectively denied a crop for that year for his inability to have his water.

"The testimony shows that without fertilizer the Luman land will yield about one ton per acre. The plaintiff testified the yield would be one and one-half per acre, but he computed his costs of production to be without fertilizer. This was shown by the testimony of Randall Hardzog, the agricultural consultant. The evidence further shows that he could expect about one-fourth of a matured crop during the first season of planting. This would mean that if the plaintiff had not had his water interfered with in 1976, he could reasonably expect to have a $35.00 per ton crop on 128 acres at one-fourth maturity, or $1,100.00. Damages in this amount will be awarded.

"The plaintiff is not entitled to damages for 1977, 1978, 1979 or 1980. He never called for his water for those years, nor did he exercise all rights, privileges and immunities available to him from the temporary injunction granted July 6, 1976. The plaintiff's chain of proof for these succeeding years must fail for the laches of the plaintiff. He cannot reasonably be expected to recover damages when he refuses or neglects to help himself in furtherance of his own enterprises. It is this failure to timely act and assert his rights which disrupts the continuity of his professed damages.

"The actions of the defendants constituted the transgression of a known right of the plaintiff by placing a dam in the Lord Ditch at a critical time for the use of water, with complete disregard to the interests of the plaintiff by failing to warn him or notify him of this action or to gain rational explanation for his actions. If he did not know the consequences of his ill-timed act, he should have, and the law will impute such understanding to him. The defendant acted in reckless disregard to the vested property rights of the plaintiff. Punitive and exemplary damages should be awarded in the sum of $3,000.00.

"The plaintiff is entitled to damages in the total sum of $6,484.00, including punitive damages. The claim of the plaintiff was unliquidated, and he will, therefore, not be allowed prejudgment interest. He will have all costs of his action. * * *"

With respect to the appellants' counterclaim, the trial judge's memorandum explained:

"The defendants have made claim for damages occurring in the winter of 1978 and 1979, resulting from the overflow and freezing of water from the Lord Ditch by leaving the headgate open. These damages are asserted to be the ice buildup in the lambing shed, isolation of a hay stack because of the ice field, and damage in some manner to a water well requiring two yards of gravel over an eight-hour period to restore it to service.

"The obvious difficulty with this claim is that no monetary loss has been offered from which a computation of damages can be made. The other deficiency is the testimony of Mrs. Wallis that she notified the water commissioner to close the headgate. He granted her permission to do so, but she claimed she was too busy lambing to give this problem serious attention. Mr. Dan Wallis testified that he felt he was restrained from tampering with the headgate because of the court's preliminary injunction. In other words, the defendants had the ability at hand, independent of action, conduct or knowledge on the part of the plaintiff, to remedy their plight. They cannot now come before the Court for damages over which they had full control but permitted to accrue against the plaintiff. Damages must be denied upon this claim."

Once again we go through the regular ritualistic rites of explaining our regimen with respect to the trial court's fact-finding function. On appeal the reviewing court assumes evidence of the successful party as true, leaves out of consideration entirely the evidence of the unsuccessful party that conflicts with it and gives the

evidence of the successful party every favorable inference which may be reasonably and fairly drawn. When there are special findings of fact as here, they are liberally construed favorably to the judgment. We presume they are right and where not inconsistent with the evidence, clearly erroneous, or contrary to the great weight of evidence, they will not be disturbed on appeal. *Cline v. Sawyer*, Wyo.1980, 618 P.2d 144; *Madrid v. Norton*, Wyo.1979, 596 P.2d 1108 and the cases there cited.

## II

We are at a loss to understand under what right and concept of the law appellants believed that they had a right to dam up the Lord Ditch. This was true not only in 1965 but then again in 1975. But in 1967 an agreement attempted to resolve and did settle their differences. Appellee's actions since then have been merely to try and abide by that settlement. He has attempted through a one-man farming operation to develop his land for proper irrigation through the Lord Ditch, performing all that he was required to do under that contract.

Appellee's adjudicated 1885 priority appropriation through the Lord Ditch was a matter of record in the State Engineer's office for all to see, even though of a blanket sort. The appropriation and ditch right, as reflected by the State Engineer's record, now of some ninety years standing, forms the foundation upon which appellee's claim rests. The Board of Control Certificate of Appropriation and adjudication that appellee's predecessors in title at that time had a water right and a ditch to run it through is prima facie evidence of a right to use the Lord Ditch. Orders of the Board of Control are clothed with the dignity of decrees entered by the courts. *White v. Wheatland Irrigation District*, Wyo.1966,

413 P.2d 252, 259. When appellants dammed up the ditch to prevent lawfully appropriated water from flowing through the Lord Ditch, it devolved upon appellants to establish their right to the water which they diverted and their right to exclusive use of the ditch. *Stoner v. Mau*, 1903, 11 Wyo. 366, 72 P. 193, reh. denied 11 Wyo. 366, 73 P. 548. They have not sustained that burden. Following their initial interference with the appellee's water and ditch rights in 1965, they entered into an agreement with appellee. An agreement for the joint use of a ditch is valid. By that agreement, the appellants recognized the ownership and right of appellee to the water to which his appropriation entitled him through the Lord Ditch as agreed. *Stoner v. Mau*, supra. This supported appellee's right under his appropriation for his entry in 1965 upon the Lord Ditch in order to clean it out.

Nowhere in the evidence presented to the trial court did the appellants present any evidence whatsoever that the appellee was not the owner of the water and ditch right as reflected by the original appropriation to the extent of his claim. In fact the evidence shows that it was acknowledged by the 1967 agreement and affirmed by the action of the Board of Control denying appellants' claim of abandonment[4] declaring appellee's right to exist by virtue of

"* * * the Archibald Campbell and James H. Hammond Appropriation, territorial appropriation, adjudicated under Proof No. 426, diverting from Pass Creek, tributary North Platte River, through the Lord Ditch, with a priority of April, 1885; and of record in Order Record 1, Page 210, describing the lands to be irrigated as follows:

"Township 20 North, Range 83 West Section 34: 300 acres—'Blanket Description' (4.28 c.f.s.)"

| | |
|---|---|
| NE¼NW¼ | 37.9 acres |
| SE¼NW¼ | 40.0 acres |
| | 118.6 acres (1.69 c.f.s.)" |

We are not concerned about the difference of 11.4 acres between the 130 acres covered by the agreement and the 118.6 acres appearing in the records of the Board of Control. Use of the Lord Ditch is the issue here.

---

4. In the abandonment proceedings the appellants alleged and sought abandonment of appellee's 1885 territorial right for irrigation of 118.6 acres within Section 34, Township 20 North, Range 83 West as follows:

| | |
|---|---|
| "NW¼NE¼ | 28.4 acres |
| SW¼NE¼ | 12.3 acres |

The fact that abandonment was sought was a further acknowledgment, in the absence of any showing to the contrary, that appellee's claim to the water and ditch right were valid and lawful in the first instance.

■ One who has a right to convey water through an irrigation ditch owns an interest in that ditch to the extent of the water right he is entitled to convey through it. *Bard Ranch, Inc. v. Weber*, Wyo.1975, 538 P.2d 24. *Bard Ranch*, supra, confirmed and approved the concept expressed in *Frank v. Hicks*, 1894, 4 Wyo. 502, 35 P. 475 that in states of the arid regions a water right becomes appurtenant to the land upon which the water is used, and the ditch for the water ordinarily becomes attached to the land, either as appurtenant or incident to the land, and necessary to its beneficial enjoyment, and therefore becomes part and parcel of the realty. Appellee's deed transferred to him all water and ditch rights "thereunto belonging or in anywise appertaining thereto."

■ Our examination of the law leads us to conclude that it is settled that while the certificate of appropriation grants and describes the extent of a water right and the means of which it is to be conveyed, it amounts to prima facie evidence of ownership of a ditch right, which is rebuttable and alone may not grant an easement across another's land for the means of conveyance described. *Bamforth v. Ihmsen, Admr.*, 1922, 28 Wyo. 282, 204 P. 345, reh. denied 28 Wyo. 320, 205 P. 1004. There, quoting from *Collett v. Morgan*, 1912, 21 Wyo. 117, 128 P. 626, it was said:

" 'The Board of Control had no power or authority to determine as between the parties the ownership or right to the use of the ditch. Its duties are confined to the distribution of the waters of the state between the several appropriators, the granting of permits to use the waters of the state for beneficial uses, to grant certificates therefor and the general supervision of such waters. Of course, in granting a certificate of appropriation, it should appear that the party has the means of conducting the water from the source of supply to the place of application. * * * There being a dispute between the parties as to the ownership and right to the use of the ditch, that question could not be finally settled by the board, but must be settled by the agreement of the parties or by a proper proceeding in a court of competent jurisdiction.' "

This conclusion is verified by *Linck v. Brown*, 1939, 55 Wyo. 100, 96 P.2d 909. There it was held that the Board of Control, when it determines water rights, only investigates the water appropriator's means of diversion. However any finding that the water is appropriated by means of a named ditch, though for some purposes is prima facie evidence of the right of the appropriator to use the ditch, it is not final or conclusive. As indicated in *Bamforth*, supra, it may be created by agreement of the parties. Linck points out that since a claim of a ditch right across another's land is a claim of an interest in land, such an agreement is within the statute of frauds and must be in writing.

The facts before us here are different than in Linck. Here there is such an agreement—the 1967 handwritten contract which did grant to appellee an easement, though not in the legalese language ordinarily used. There may be in the history of appellee's land title an old easement arising out of the Campbell-Hammond arrangement (whatever that may have been beyond what appears in the Proof of Appropriation) across appellants' land to appellee's land. If so, the record does not show it nor is any prescriptive claim made. Appellee's claim of right to use of the Lord Ditch, as far as appellants are concerned, is finally absolutely confirmed by the 1967 written agreement.

■ Appellants argue that any right to use of the Lord Ditch under that agreement was abandoned because he delayed doing the work called for over a period of five years. There are no time limits prescribed in the writing but appellants attempt to collate abandonment of a ditch right with abandonment of a water right. If that is

so, which we do not need to decide, the unsuccessful abandonment proceedings initiated by appellants under the provisions of § 41–3–401, W.S.1977, settled that position adversely to appellants. No cogent argument with proper authority for such a proposition is made, so we give it no credence. *Scherling v. Kilgore*, Wyo.1979, 599 P.2d 1352.

■ As was said in *Frank v. Hicks*, supra, the general rule of law is that when a party grants a thing he grants, by implication, whatever is incident to it and necessary to its beneficial enjoyments. The appellee does not claim any prescriptive right, though a joint user of a ditch may acquire such a right by prescription. *White v. Wheatland Irrigation District*, supra.

■ Whatever prima facie ditch right appellee had before the 1967 agreement, as far as appellants are concerned, there is now no question whatsoever that he now and since 1967 has an unquestionable easement over appellants' land to convey his claimed appropriation from Pass Creek through the Lord Ditch. An easement may arise by agreement. As said by the author in 2 Thompson on Real Property (1980 Replacement by Grimes) § 331, pp. 101–102:

> "Easements may arise by virtue of contract as well as by grant. While easements are generally acquired by grant or prescription it is also true that they may be acquired by contract, where from the nature of the subject matter it is evident that the parties intended that privileges designed for the permanent use of the property should form an incident of the principal contract. The easement thus created is designated an 'easement by implication,' and in determining whether such easement arises the cardinal consideration is the presumed intention of the parties concerned as disclosed by the extent and character of the user, the nature of the property, and the relation of the separated parts to each other. * * *"
> (Footnotes omitted.)

Nor is any particular type of language necessary in creating an easement:

> "At common law no words of art were necessary to create easements as they were to create fees. Words of limitation are not necessary to create an appurtenant easement. No technical form of words is necessary to grant a servitude on realty. It is only necessary that the parties make clear their intention in the instrument to establish a servitude. Whether ambiguous language created a fee or an easement is one of intention that must be gathered from the language of the conveyance and from the surrounding circumstances. All doubts are to be resolved in favor of the use of land free of easements.

> "No orthodox form is necessary to grant a servitude on land. It is only necessary that the parties make clear their intention in the instrument to create one. Whether a right-of-way or other easement is embraced in a deed depends upon the construction to be given to it when the grant is not in express words. To ascertain the intention of the parties, reference may be had not only to the terms of the deed, but to the circumstances attending the transaction, the situation of the parties and the condition of the property. The question is then whether an easement is implied from the terms of the grant as interpreted in connection with all these incidents.

> \* \* \* \* \* \*

> "Where the intention and purpose of the parties to create an easement is apparent, and it is expressly provided that the covenants in the agreement shall run with the land, the use of the word 'grant' is not essential. The law endeavors to give effect to the intention of the parties, whenever that can be done consistently with rational construction, and, if necessary to that end, an agreement is sometimes held equivalent to a grant. A contract giving one the right to pass over the lands of another is an easement, extending only to a temporary disturbance of the owner's possession." Id., § 332, pp. 111–112, 115. (Footnotes omitted.)

We hold that the appellee had an easement by way of the Lord Ditch through appellants' land to convey his claimed appropriated water to his land. This conclusion is based not only on his unrebutted prima facie right, as far as appellants are concerned, arising out of his Board of Control adjudicated water right, but also by the 1967 agreement between appellants and appellee. The owner of an easement and the owner of land each possess rights and each must, as far as possible, respect the other's use. *Bard Ranch Co. v. Weber*, Wyo.1976, 557 P.2d 722, 730. An injunction is a remedy available to enforce the respective rights as between the owner of the easement and the owner of the subservient estate. *Weber v. Johnston Fuel Liners, Inc.*, Wyo.1974, 519 P.2d 972. See also a recognition by the legislature of injunctive relief as a means to enforce water and ditch rights, § 41–6–302, W.S.1977.

### III

On the matter of damages and dismissal of the counterclaim, we have reviewed the record and find that the evidence supports the court's expressed findings set out in the introduction to this opinion.

Affirmed.