**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLENE DELAUNAY and
MANUEL DELAUNAY,

Plaintiffs - Appellees,

v.

RUSTY COLLINS, GARY COLLINS
and FLOYD COLLINS,

Defendants - Appellants.

No. 02-8097
(No. 01-CV-1039-B)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HENRY**, and **LUCERO**, Circuit Judges.

This appeal stems from a feud between neighbors in Wyoming over access to and use of water on tribal lands. Not typical water law plaintiffs, Charlene Delaunay, and her husband Manuel Delaunay, alleged that defendant Floyd Collins and his two sons, Gary and Rusty, (the "Collins") intentionally blocked their water supply because of Manuel's race in violation of 42 U.S.C. §§ 1981,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1982, and 1985(3). The Collins are enrolled members of the Northern Arapaho Tribe of the Wind River Reservation. Charlene is also an enrolled member; Manuel is a Caucasian, French citizen. At trial, the jury unanimously found for the Delaunays and awarded damages in the amount of $350,000. The district court granted injunctive relief and attorneys' fees and remitted the amount of the compensatory damages award. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **AFFIRM**.

## I

In 1996, Charlene Delaunay purchased eighty acres of land on the Wind River Reservation and, in 1997, acquired a land lease on trust property. Charlene and Manuel planned to use their land for sheep ranching. Forty acres of the Delaunays' fee property have a state water right with a 1905 priority date through Little Wind River Ditch Number 5, and fifty-seven acres of their lease property have a reserved water right of 1868, also through the Little Wind River Ditch Number 5. Another tract of land, Allotment 1125, held in trust by the United States on behalf of Floyd Collins, similarly includes a reserved water right of 1868 through Little Wind River Ditch Number 5 and is adjacent to the Delaunays' lease-held land. Floyd's son Gary Collins is the tribal water engineer on the reservation and, according to his testimony, is responsible for administering water within the Wind River Indian Reservation and enforcing the tribal water code.

2

Altercations between the Delaunays and the Collins began in 1997 when, after Manuel declined to leave the gate on Floyd's trust land, Rusty testified that he drove his truck into Manuel's truck, pushing it back from the gate. A second incident occurred on July 25, 1999, when after seeking to prevent Gary from walking cattle through a neighbor's allotment, Manuel testified that Gary pushed him into a fence, gave him a black eye and a broken nose, and placed a wire ring around his neck. Charlene testified that as she hit Gary with a shovel to protect Manuel, Gary told Manuel that he had "no right to be on tribal lands" and yelled to the couple, "you're just visitors." (R. at 151.)

Charlene testified that in September of 1999, Rusty began placing dirt and gravel in the main ditch that runs through Floyd's trust land and that serves the Delaunays' land, blocking the water flow to their property. Rusty testified to placing additional obstructions in the ditch in May 2000 and late August 2000. In 1999, consulting with a prior non-Native American landowner who reported similar problems with the Collins, Charlene alleged that she and Manuel decided they had to sell one-third of their sheep flock. Although Gary admitted that the tribal water board directed Rusty to desist from blocking the main ditch, the Delaunays testified that the blockages resumed in July 2001, and that Gary did nothing to correct or prevent them.

In addition to the physical altercations and water obstructions, the Delaunays also alleged that they received discriminatory treatment when they enlisted the help of the tribal water board. According to Charlene, at a board meeting in July 2000, Gary told the Delaunays to leave the ditch alone, and that Manuel had no right to be on the reservation or on tribal land. Yet at that same meeting Gary proceeded to facilitate the cooperative resolution of a water dispute between two other families. Moreover, although the board informed the Delaunays in September 2000 that it would not handle private ditch matters, Gary admitted that the board later realized that it did have jurisdiction over private ditches, however, Gary neglected to tell the Delaunays.

In 2001, the Delaunays brought suit in federal court for damages and injunctive relief. They claimed that Manuel, as a white, non-Native American, and Charlene, as his wife, had been subject to race-based discrimination by the Collins in violation of 42 U.S.C. §§ 1981, 1982, and 1985. In particular, they claimed that, on account of Manuel's race, the Collins deprived and conspired to deprive the Delaunays of equal benefits of the laws through Gary's abuse of his position as tribal water engineer. The complaint also alleged that the Collins deprived the Delaunays of their rights regarding real property by blocking their water and impeding their ranching and farming operation. The jury returned a unanimous verdict in favor of the Delaunays and awarded $350,000 in damages.

4

Following the jury verdict, the district court granted the Delaunays injunctive relief, which, inter alia, enjoined the Collins from interfering with the Delaunays' water rights and restrained Gary, as water engineer, from administering the water in Little Wind River Ditch Number 5.

The district court also ruled on several post-trial motions. It denied the Collins' renewed motion for judgment as a matter of law, finding that the Delaunays presented sufficient evidence of racial animus to allow a reasonable jury to find for the Delaunays. It proceeded to grant the Delaunays' motion for attorneys fees in the amount of $27,151.18 pursuant to 42 U.S.C. § 1988. In response to the Collins' motion for a new trial or, in the alternative, for remittitur, the district court upheld the jury's finding of liability, but reduced the damage award to reflect actual damages of $41,224. 24[1] and compensatory damages of $100,000 for injury to the Delaunays' physical and mental health. The Delaunays agreed to accept the reduced judgment and, on September 6, 2002, the district court entered judgment in favor of the Delaunays in the amount of $141,224.24, plus costs and attorneys' fees.

The Collins now appeal, arguing that the district court erroneously: (1) failed to give their proposed instruction to the jury; (2) granted injunctive relief;

---

[1] The award of actual damages was comprised of $4,800 for lost hay, $200 for a water tank, $90 for a water trough, $3,020 for time spent at meetings and removing obstructions, $32,923 for lost profit from the sheep business over five years, and $191.24 in medical bills.

(3) denied their motion for judgment as a matter of law; (4) calculated a remittitur; and (5) awarded attorney's fees.

## II

## A

With respect to the Collins' motion for judgment as a matter of law, we review de novo the district court's denial of such a motion. Turnbull v. Topeka State Hosp., 255 F.3d 1238, 1241 (10th Cir. 2001). Federal Rule of Civil Procedure 50(a)(1) instructs the district court to grant judgment as a matter of law only if "after a party has been fully heard on an issue, there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 796 (10th Cir. 2001). Thus, we may only reverse "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 549 (10th Cir. 1999) (quotation omitted).

To establish a claim under 42 U.S.C. § 1981, the Delaunays must show that: (1) they are members of a protected class; (2) the Collins had the intent to discriminate on the basis of race; and (3) that discrimination interfered with a protected activity as defined in § 1981—here the right to the "full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a); Hampton v. Dillard Dep't. Stores, Inc., 247 F.3d 1091, 1101–02

6

(10th Cir. 2001).  To establish a claim under 42 U.S.C. § 1982, the Delaunays must demonstrate that:  (1) they are members of a protected class; (2) the Collins denied the Delaunays rights or benefits connected with ownership of property; and (3) the Collins would not have denied such rights or benefits in the absence of racial discrimination.  See Zhu v. Fisher et al., 151 F. Supp. 2d 1254, 1258 (D. Kan. 2001); see also Reeves v. Carrollsburg Condo. Unit Owners Ass'n, 1997 WL 1877201, at *8 (D.D.C. 1997) (holding that homeowner association's failure to evenhandedly enforce rules and act upon rule violations among tenants established potential liability under §§ 1981 and 1982).  Section 1985(3) does not provide substantive rights; rather it provides an additional remedy for conspiracy to deprive any person of the equal protection of the laws.  See Great American Fed. Sav. and Loan Ass'n. v. Novotny, 442 U.S. 366, 372 (1979).

In denying the Collins' motion, the district court found that:

. . . there was ample evidentiary support which would allow a reasonable jury to find for the Plaintiffs on each of their racial discrimination claims  . . . .  Specifically, the Defendants are all enrolled Members of the Arapaho tribe, and the Plaintiff Manual [sic] Delaunay is a white, non Native American  . . . .  and Plaintiff Charlene Delaunay is an enrolled Arapaho married to Manual [sic]. This racial composition, combined with the actions and statements made by the Defendants to the tribal water board and the Plaintiffs, as well as their apparent peaceful interaction with Native American neighbors and their not-so-peaceful interaction with non Native American neighbors provides one of the many legally sufficient justifications supporting the jury's verdict in favor of the Plaintiffs.

7

Delaunay v. Collins, No. 01-CV-1039-B, slip op. at 6 (D. Wyo. Aug 13, 2002). Stressing that it is not our role to weigh the evidence, evaluate the credibility of witnesses, or substitute our conclusions for those of the jury, see Medlock, 164 F.3d at 549 (quotation omitted), we agree with the district court that the Delaunays presented a legally sufficient basis for the jury to find in their favor.

At trial, the Delaunays asserted several arguments that would provide such a basis. First, they claimed that they were members of a protected class because unlike the Collins who were enrolled members of the Northern Arapaho Tribe, Manuel was a white non-Native American and Charlene was his wife. See McDonald v. Sante Fe Transp. Co., 427 U.S. 273, 286–87 (1976) (concluding that § 1981 affords protection from racial discrimination to both non-whites and whites). Second, they claimed that the Collins: (1) interfered with their "full and equal benefit of all laws and proceedings" under 42 U.S.C. § 1981 (e.g., that Gary, as tribal water engineer, repeatedly failed to enforce evenhandedly the water code and directives of the water board); and (2) interfered with their rights concerning real and personal property under 42 U.S.C. § 1982 (e.g., that the Collins blocked their water supply and impeded their ranching operation). Third, the Delaunays proffered evidence of intentional discrimination on the basis of race, such as statements by Gary that repeatedly characterized Manuel as a visitor with no rights on the reservation, evidence that other non-Native American

8

property owners experienced confrontations with the Collins, and testimony that Rusty and Gary acted to resolve water disputes among others through communication and enlistment of the help of the water board. Finally, the Delaunays argued that the Collins' claim—that the Delaunays lacked a ditch easement and therefore had no rights concerning the ditch—was a pretext for discrimination. Notably, none of the Collins testified at trial that their reasons for blocking the ditch were because the Delaunays lacked an easement.

Taking these claims in their totality, we agree that the Delaunays presented legally sufficient evidence to sustain the jury verdict. Accordingly, we affirm the district court's denial of judgment as a matter of law.

**B**

We turn to the Collins' claim that the district court erroneously refused their proffered jury instruction. The refusal to give a particular jury instruction, "even if it is an accurate statement of the law, is within the discretion of the district judge." United States v. Pena, 930 F.2d 1486, 1492 (10th Cir. 1991). Reversal is proper if, upon examination of the instructions as a whole, a "deficient jury instruction is prejudicial." Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1202 (10th Cir. 1997) (citations omitted).

To preserve the issue on appeal, Federal Rule of Civil Procedure 51 requires that a party both proffer an instruction and timely object to the refusal to

9

give the requested instruction, see Giron v. Corrs. Corp. of America, 191 F.3d 1281, 1288–89 (10th Cir. 1999), or, in the alternative, demonstrate that the "district court is aware of the party's position and it is plain that further objection would be futile." Abuan v. Level 3 Communications, Inc., 353 F.3d 1158, 1172 (10th Cir. 2003) (quotation omitted). A party's failure to preserve the issue limits our review to plain error, and we may reverse only where the failure to give a proffered instruction is patently erroneous and would result in a fundamental injustice. Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1227 (10th Cir. 2001) (quotations omitted). Although the Delaunays argue on appeal that the Collins did not properly object to the jury instructions given by the district court, we need not reach this question because we conclude that the district court's instructions, viewed as a whole, were neither prejudicial nor in plain error.

The Collins' proffered jury instruction would have had the jury conclude that "since the plaintiffs have no easement for a ditch across the defendant's land, they have no right to enter the defendant's land" and therefore the Collins' failure "to allow water to cross their land or to permit plaintiffs to maintain the ditch across the defendant's land" cannot constitute a violation of the Delaunays' rights, unless "the basis of the defendants actions in denying the plaintiffs access to clean the ditch or allow water to pass through Floyd Collin's land were based solely on the race of Manuel Delaney." (R. at 116 (errors in original).)

10

Because the district court determined that it could not conclude as a matter of law that the Delaunays did not have an easement, it refused the Collins' proposed instruction and instead instructed the jury as follows:

> You are instructed that an easement is a way in which one may obtain the right to use the land of another for a limited purpose, with all other rights in title remaining in the owner.
>
> If you find that the plaintiffs have established by a preponderance of the evidence that a ditch and ditch maintenance easement exists in their favor, the plaintiffs then have a limited right to have the ditch cross the defendant Floyd Collins' property and the water and a right to enter onto his land for the purposes of maintaining the ditch.

(R. at 1076 (emphasis added).)  It proceeded to instruct the jury on the elements it would need to find in order to conclude by a preponderance of the evidence that the Delaunays had established an easement by prescription, grant, or agreement.

On appeal, the Collins argue that the district court's refusal to give the Collins' instruction—which would have instructed the jury that Delaunays lacked an easement as a matter of law—constitutes prejudicial error.  In support of their argument they reason that:  (1) the Delaunays did not offer written proof of an easement; (2) an easement may not be obtained on land held in trust by the United States by prescription or adverse possession because the United States is immune from suit, cf. Dry Creek Lodge, Inc. v. United States, 515 F.2d 926, 930 (10th Cir. 1975) (upholding dismissal of property claims as to the United States because

11

it had not consented to the suit); and (3) in Wyoming, a certificate of appropriation, which grants a party water rights, does not automatically grant a ditch easement, see Collett v. Morgan, 128 P. 626, 627 (Wyo. 1912) (explaining that where a certificate of appropriation exists but the parties dispute their corresponding ditch rights "that question . . . must be settled by the agreement of the parties or by a proper [court] proceeding . . . ."); cf., Wallis v. Luman, 625 P.2d 759, 766 (Wyo. 1981) (clarifying that a certificate of appropriation "amounts to prima facie evidence of ownership of a ditch right, which is rebuttable and alone may not grant an easement across another's land for the means of conveyance described") (emphasis added).

Upon our review of the record and the jury instructions as a whole, the Collins' argument fails to persuade us for two reasons. First, the district court did not precisely define the nature of an easement for ditch use and maintenance; evidence in the record suggests that a jury reasonably could find that the Delaunays had permission to convey their adjudicated water rights through the ditch across Floyd's property pursuant to custom, implicit agreement, or a general practice of permissive use on tribal lands. Indeed, according to testimony at trial and the Collins' brief on appeal, enrolled tribal members and non-enrolled close family members are entitled to go onto reservation lands without specific permission. Charlene's uncle, the previous owner of her fee-held land and an

12

enrolled tribal member, testified he had no problem conveying his adjudicated water that flowed through the ditch on the Collins' land. Floyd himself testified that he had done ditch maintenance work on upstream trust property without any agreement because permission was not necessary to enter trust land. In addition, Gary admitted that if the Delaunays lacked a ditch easement, the Collins similarly lacked an easement to maintain an upstream ditch. Charlene is an enrolled member of the Arapaho Tribe, and Manuel is her husband; thus a jury could reasonably find that their use and maintenance of the ditch on Floyd's trust property constitutes permissible use of reservation land.[2] Moreover, we again note that none of the Collins testified at trial that their reasons for blocking the ditch were because the Delaunays lacked an easement.

Second, even if the district court erred in refusing the Collins' proffered instruction, we conclude that the error would not have prejudiced the Collins. The district court repeatedly instructed the jury that it must determine that the Collins discriminated against the Deluanays on the basis of race in order for the Delaunays to prevail under 42 U.S.C. §§ 1981, 1982 and 1985. In addition, to find for the Delaunays on their §§ 1981 and 1985 claim, the jury was required to find that the Collins deprived the Delaunays of equal benefits under the law; to

---

[2] We note that the Collins did not introduce evidence that Manuel lacked a permit or permission to be on the reservation.

13

find for the Delaunays on their § 1982 claim, it was required to find that the Collins denied the Delaunays their rights regarding the operation of their farm and ranching business. The district court cautioned further: "If you find that race was not a substantial factor in the defendants' actions, you must find for the defendants." (R. at 1066.)

Moreover, the Collins' arguments on appeal notwithstanding, their proposed instruction squarely states that regardless of whether an easement existed, a jury could find that the Delaunays' rights had been violated if it concluded that "the defendants' actions in denying the plaintiffs access to clean the ditch or to allow water to pass through Floyd Collins's [sic] land were based solely on the race of Manuel Delaney [sic]." (R. at 116.) Because the jury found that the Collins violated §§ 1981, 1982, and 1985, accordingly they must have found—consistent with the Collins' proposed instruction—that the Collins actions were motivated by racial animus. Moreover, it stands to reason that the jury found that the Collins intentionally deprived the Delaunays of equal benefits of the law and their rights regarding real property, thus satisfying the elements of a §§ 1981 and 1982 claim. We therefore conclude that the district court's refusal of the Collins' proposed jury instruction was neither prejudicial nor plain error and therefore squarely within its discretion.

14

## C

As to the Collins' argument that the district court erred in granting injunctive relief, we review a decision to grant an injunction for abuse of discretion. Prows v. Fed. Bureau of Prisons, 981 F.2d 466, 468 (10th Cir. 1992). The district court restrained the Collins from interfering with the appropriated water to which the Delaunays are entitled and which flows through Little Wind River Ditch Number 5. It also restrained Gary, as tribal water engineer from administering water in the ditch because of his conflict of interest. On appeal, the Collins repeat their syllogism that because the Delaunays lacked an easement for the portion of the irrigation ditch that crossed Floyd's trust land, they had no rights which the Collins could violate, and, therefore, that injunctive relief was improper.

This argument, however, misapprehends facts regarding the historical conveyance of water on the reservation as well as the harm and relief in question. The Delaunays complained of an ongoing pattern of civil rights violations—namely, physical assault, interference with their ability to conduct their ranching operation, and a discriminatory administration of the tribal regulations pertaining to water distribution on reservation land—based on Manuel's race. Given our analysis above that a jury could reasonably find by a preponderance of the evidence that the Delaunays use of the ditch was permissive,

15

and given the jury's finding that the Collins' actions violated the Delaunays' civil rights, we conclude that the district court did not abuse its discretion in granting injunctive relief.

**D**

Although the district court denied the Collins' motion for a new trial, it proceeded to remit the jury award of $350,000 to $141,224.24, representing $41,224.24 in actual damages and $100,000 in compensatory damages. On appeal, the Collins contest the amount of remittitur that the district court granted. They reason that because the Delaunays lack proof of an easement, the Delaunays may only claim damages for medical bills resulting from the fight between Manuel and Gary.

We review the district court's decision to grant a remittitur on the grounds that the jury awarded excessive damages for abuse of discretion. See Fitzgerald v. Mountain States Tel. and Tel. Co., 68 F.3d 1257, 1261 (10th Cir. 1995); see also, Sheets v. Salt Lake County, 45 F.3d 1383, 1390 (10th Cir. 1995) (reviewing the denial of a remittitur for a "gross abuse of discretion") (citations omitted). As discussed above, in addition to considering whether the jury could find that the Delaunays had permission to convey water through the ditch on Floyd's trust land, we consider the Delaunays' rights to equal benefits of the laws and to real property such as their ranching and farming operation. The Delaunays set forth

16

substantial testimony of emotional and physical hardship, financial and personal stress, and concern for their safety in support of an award of compensatory damages. Therefore, we conclude that the district court did not abuse its discretion in calculating the remittitur.

E

Finally, we uphold the district court's award of attorneys' fees to the Delaunays' counsel. Pursuant to 42 U.S.C. § 1988, in an action to enforce a provision of 42 U.S.C. §§ 1981, 1982, and 1985, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "[W]e give great weight to that court's assessment of a proper fee." Zuchel v. City and County of Denver, 997 F.2d 730, 743 (10th Cir. 1993) (quotation omitted).

In granting attorneys' fees, the district court stated that "[u]pon careful consideration and review of Plaintiffs' Amended Affidavit regarding Plaintiffs' attorney's fees, the Court finds that the affidavit has established a reasonable number of hours spent on this litigation, and a reasonable rate of $100.00 per hour." Delaunay v. Collins, No. 01-CV-1039-B, slip op. at 8 (D. Wyo. Aug 13, 2002). On appeal, the Collins simply argue that the Delaunays must do more than produce their own attorney's affidavit to establish the reasonableness of the attorney's fee; the Collins do not, however, contest the proposed rate or

17

calculation. We owe substantial deference to the district court in reviewing its computation of attorneys' fees, and nothing in the briefs on appeal supports a conclusion that the district court abused its discretion.

## III

The judgment of the district court is **AFFIRMED** and this case is **DISMISSED**.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge